# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**ARTHURETTA L. HOLMES-MARTIN,**            )
                                            )
          **Plaintiff,**                    )
                                            )
          **v.**                            )          **Civil Action No.: 07-2128 (RMU)**
                                            )
**MICHAEL O. LEAVITT,**   **Secretary**     )
          **Department of Health and Human**)
          **Services,**                     )
                                            )
          **Defendant.**                    )
_____)

## DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, by undersigned counsel, respectfully moves the Court, pursuant to Rules 12(b)(1), 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing the Plaintiff's claims in this action on the grounds that the Court lacks subject matter on some of the Plaintiff's claims and the Plaintiff has failed to state a claim upon which relief can be granted. In the alternative, the Defendant asks for an order granting summary judgment on the grounds that there are no genuine issues in dispute and Defendant is entitled to judgment as a matter of law. In support of this Motion, this Court is respectfully referred to the accompanying Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute and Exhibits. A proposed Order is also attached.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


__/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-7224


OF COUNSEL:
MONICA HUGHES DAVY
Senior Attorney
Office of General Counsel
Department of Health and Human Services

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                            )
**ARTHURETTA  L. HOLMES-MARTIN,**            )
                                            )
          **Plaintiff,**                     )
                                            )
     **v.**                                  )    **Civil Action No.: 07-2128 (RMU)**
                                            )
**MICHAEL O. LEAVITT, Secretary**            )
**Department of Health and Human Services,** )
                                            )
          **Defendant.**                     )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS OR , IN THE ALTERNATIVE, FOR  SUMMARY  JUDGMENT**

       This case involves plaintiff Arthuretta L. Holmes Martin, whose employment was

terminated effective July 2007 after the Plaintiff stipulated that, for medical reasons, she was

unable to do her job -- the very definition of a legitimate business reason for termination.  There

is no dispute about the Plaintiff's inability to do her job; plaintiff expressly has stipulated to this.

Subsequently, the Department of Labor denied the Plaintiff's claim for worker's compensation on

the ground that the Plaintiff had not established that her medical injuries occurred on the job.

       This is not a case about discrimination, albeit the Plaintiff has brought a two-count

complaint alleging race discrimination and retaliation, pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e-16 and 42 U.S.C. § 1981a and the Civil Service Reform Act, 5

U.S.C. § 7703(b)(2).[1]  Plaintiff now asks this Court to micromanage legitimate management

decisions made by supervisors tasked with managing the workplace -- precisely what this Circuit

_____

       [1] Plaintiff alleges that she brings this action pursuant to the Civil Service Reform Act.
Complaint ¶ 1.  Plaintiff, however, provides no factual basis for this assertion of jurisdiction in
her complaint.

has urged federal courts not to do.

The Plaintiff either fails to state a legally cognizable claim or fails to prove discrimination on all of her allegations of discrimination. The Plaintiff made seven allegations of discrimination that the agency accepted for investigation during the mandatory administrative proceedings in this case. With regard to the Plaintiff's allegations concerning her December 2004 performance appraisal, alleged delay in processing a waiver regarding a salary overpayment, leave usage in October and November 2004, alleged management delays in responding to requests in 2004 and 2005, and management undermining ability to perform her job responsibilities, none of these five issues are actionable adverse personnel actions as that term has been defined, essentially because they are just mediate decisions. Accordingly, the Court should dismiss these allegations for lack of subject matter jurisdiction.

In order to survive summary judgment on her removal/race claim, the Plaintiff must present evidence that an employee outside of her protected class, who was also medically unable to perform her duties, was not removed. The Plaintiff cannot make this showing. Summary judgment is appropriate on the plaintiff's reassignment of work claim because there is no genuine dispute and there is no factual support for such claim.

In order to survive summary judgment on the retaliation claim, the Plaintiff must demonstrate that the filing of her EEO complaints and the removal were close enough in time to infer a causal connection, establishing that the agency would not have removed her but for her protected activity. Here, the Plaintiff's removal was a year and three months after her last EEO complaint was filed and causal connection as the courts have defined it is lacking. Accordingly, the Plaintiff's complaint should be dismissed or alternatively, summary judgment entered for Defendant.

**Defendant's Statement of Material Facts**

The Office of Small and Disadvantaged Business Utilization (OSDBU), Office of

Grants and Acquisition Management in the Office of the Secretary, Department of Health and

Human Services (HHS), is responsible for the overall management of the Department's

preferential procurement programs including Section 8(a), the Women's Business Program, and

the Small and Disadvantaged Business Programs.  HHS  Response (Exhibit 1).  The Director of

OSDBU is Debbie Ridgely.   Affidavit of Debbie Ridgely (Ridgely Aff.) (Exhibit 2. p.1).

On January 2, 2000, the Plaintiff began her employment as a Procurement Analyst, GS-

1102-14, in OSDBU.   Affidavit of Arthuretta Holmes-Martin (Plaintiff Aff) (Exhibit 3).  In the

fall of 2004, the Plaintiff was counseled by her first-level supervisor, Ms. Ridgely with regard to

her excessive unscheduled leave use and failure to submit leave requests in the system.  Ridgely

Email 10/1/04 (Exhibit 4).

The Plaintiff provided a lengthy response in an October 5, 2004 email and stated that she

was unhappy because of the "disingenuous promises and abandonment of support to small

businesses by Government officials" and "how you treat me and others."  The Plaintiff also

complained about Ms. Ridgely's management style, lack of support and training, "micro-

managing," "limiting creativity," and lack of courtesy.  She also stated that she was frustrated at

work and would plan an "exit strategy." Plaintiff Email 10/5/04 (Exhibit 5).

In March 2005, Ms. Ridgely warned the Plaintiff about inappropriate behavior, standards

of conduct, leave and performance concerns.  Ridgely Memo 3/11/05 (Exhibit 6).

**EEO Complaints**

The Plaintiff made initial contact with the EEO office on January 14, 2005.  2005

Counselor's Report (Exhibit 7).  She filed her first EEO complaint (OSH-014-05) on March 24,

2005. Acceptance Letter 4/5/07 (Exhibit 8).  The Plaintiff filed her second complaint (OSH-010-06) on April 24, 2006. Acceptance Letter 4/24/06 (Exhibit 9).  The responsible management official for both claims was Debbie Ridgely. 2005 Counselor's Report (Exhibit 10).

During her initial meeting with the EEO counselor, the Plaintiff stated that "she was discriminated against based on reprisal (prior EEO activity) when on November 18, 2005, she was sent threatening and hostile emails from" Ms. Ridgely.  She also claimed that authoritative responsibilities were taken away from her.  Counselor's Report 12/23/05 (Exhibit 10, p. 4). An informal resolution could not be reached during this stage. The agency attempted to move toward the next step in processing the complaint.  Right to File Letter 4/17/ 2005 (Exhibit 11). During this process, the EEO Director sent two letters to the Plaintiff asking her to be more specific in her allegations so that the complaint could be properly investigated.  Shorts letters 10/11/05 (Exhibit 12) and 10/20/05 (Exhibit 13).  The Plaintiff never responded to this correspondence.  Subsequently, the processing of the complaint was placed on hold due to other failed attempts to resolve the case and because the Plaintiff had three different representatives. Shorts Letter to OGC 11/10/05 (Exhibit 14).

Ultimately, the EEOC administrative judge demanded that the agency accept the issues as they were initially stated and to conduct an investigation.  EEOC Order 8/24/06 (Exhibit 15). The following issues were accepted:

The complainant claimed she was discriminated against based on her sex (female), color (black), race (African American) and reprisal for exercising her right to Family Medical Leave and being subjected to a hostile work environment when:

1.) Complainant's performance appraisal rating of Fully Successful with written supplement received on December 14, 2004;

2.) Management's delay in processing Complainant's waiver request regarding salary

4

overpayment in November 2004;

3.)  Leave usage in October and November 2004;

4.)  Management's excessive delay responding to Complainant's requests for performance appraisal documentation (December 2004; 2005) copy of her personnel folder (December 2004), approval of outside employment (February, April and June 2005) and approval to accept a six-month detail to another office (July 2005);

5.)  Management undermined Complainant's ability to perform her job responsibilities;

6.)  Management alienated Complainant from her co-workers and reassigned her meaningful tasks to others in the office (November 2004-June 2006); and

7.)  Management retaliated against Complainant for openly opposing employment discrimination.

Acceptance Letter, 4/5/07 (Exhibit 16).

### December  2004 Performance Rating

For the 2004 performance rating, the Plaintiff received the highest rating available, Fully Successful.  2004 Performance Plan (Exhibit 17).  Ms. Ridgely provided a full page of complimentary comments on this rating and ended the narrative with the following comment, "An area of improvement is to become a better 'team player'."  Performance Evaluation (Exhibit 17, p. 11).

The Plaintiff's specific complaint was that Ms. Ridgely made this statement without providing an explanation.  The Plaintiff stated in her affidavit, " I filed a complaint because Ms. Ridgely refused to define what she meant by my not being a team player."  Plaintiff Aff. (Exhibit 3, p. 4).

### Delay in Processing Waiver Request Regarding Salary Overpayment

While the Plaintiff was on leave without pay, she was improperly paid for a federal holiday, October 11, 2004.  Ridgely Aff. (Exhibit 2,  p. 2); Plaintiff Aff. (Exhibit 3, p. 4);

Plaintiff Rebuttal Aff. (Exhibit 18, p. 2). The agency notified the Plaintiff of this error on

November 12, 2004. The agency requested reimbursement of this overpayment of $245.05 on

January 3, 2005. Overpayment Collection Notice (Exhibit 19, p. 3). On January 20, 2005, the

Plaintiff requested a waiver of the overpayment because it occurred through administrative error.

Waiver Request (Exhibit 20). On January 11, 2006, the waiver request was denied by the

Agency. Denial of Waiver of Overpayment (Exhibit 21).

<u>**Leave Usage in October and November 2004**</u>

In September and October 2004, the Plaintiff took Family Medical Leave (FMLA) to

take care of her disabled son. Plaintiff Aff. (Exhibit 3, p. 4). Management approved all of the

Plaintiff's request for use of FMLA leave when it was requested. Ridgely Aff. (Exhibit 2, pp. 3-

4).

<u>**Delay in Responding to Requests for Documentation**</u>

The Plaintiff submitted a request for outside employment in April 2005. Plaintiff Aff.

(Exhibit 3, p. 6). On June 1, 2005, Marc Weisman, the ethics official responsible for reviewing

such requests asked for additional information from the Plaintiff in order to make a conflict of

interest determination. Weisman Email 6/1/05 (Exhibit 22). On June 3, 2005, the Plaintiff

challenged Mr. Weisman's authority to review her request. Plaintiff Email 6/3/05 (Exhibit 23).

As of June 29, 2005, the Plaintiff had failed to submit the information requested to make a

conflict of interest determination. Weisman Memo 6/29/05 (Exhibit 24).

On July 29, 2005, the Plaintiff requested that she be approved for a six-month detail to

the Office of Minority Health beginning September 1, 2005. In this written request, the Plaintiff

asked for a response by August 5, 2005. Plaintiff's Detail Request (Exhibit 25). On July 29,

2005, Ms. Ridgely had a conversation with the Plaintiff and denied this request. Ms. Ridgely

memorialized the conversation in a memorandum dated August 5, 2005.  Ridgely Response

Memo (Exhibit 26, pp 1-3).

### **Reassignment of Tasks**

While the Plaintiff was on LWOP as requested under FMLA, "a single task (the report

for the Small Business Regulatory Enforcement Fairness Act) was reassigned to another co-

worker.  The Plaintiff's duties which covered the 8(a), Small Disadvantaged Business,

Subcontracting, the new Electronic Subcontract Reporting System and the Small Business

Manual remained the same and were never reassigned."  Ridgely Aff. (Exhibit 2, p. 4).

The Plaintiff was asked to "take on the Women's Business Program as well as the

Service-Disabled Veteran-Owned Business program for the Department, when another employee

retired.  Those two duties were transferred back in June 2006, when the position was finally

back-filled."  Id.

### **The Removal**

In a letter dated June 16, 2006, the Plaintiff's psychologist, Dr. Frances M. Holland,

advised that the Plaintiff had been under her treatment for "*several years*" (italics added for

emphasis) and that "[t]reatment was necessary due in part to episodes of Major Depression and

Generalized Anxiety Disorder induced by extended stressful conditions, particularly in her work

situation."  She added, "[t]his exacerbation of symptoms, in turn, has necessitated increasing her

medication in order to allow even minimal functioning.  It is my understanding that she is using

an increased amount of sick leave and leave without pay when anxiety and depression render her

incapable of functioning."  She asked that the Plaintiff be "given a medical leave of absence

immediately. The duration of this leave should be not less than 30-45 days."  Letter of Dr.

Frances Holland 6/16/06 (Exhibit 27).  On June 19, 2006, the Plaintiff went on medical leave.

Chance Letter 10/27/06 (Exhibit 28); Leave Records (Exhibit 29).

Ms. Ridgely approved both sick leave (SL) and leave without pay (LWOP) as requested by the Plaintiff's medical provider.  Leave Records (Exhibit 29).

On June 21, 2006, Rachel Chance, Human Resources Specialist, notified the Plaintiff of her entitlement to leave under the Family Medical Leave Act (FMLA) and notified the Plaintiff that she was forwarding the medical note from Dr. Frances Holland to the Federal Occupational Health (FOH) consultant for medical review for her request for extended leave.  She also requested that the Plaintiff provide a medical release form so that FOH could review her medical records to determine the extent to which the agency needed to provide accommodations. Chance Email 6/21/06 (Exhibit 30).

In a letter dated July 10, 2006, the Plaintiff's husband, Clyde Martin, wrote a letter to Ms. Chance, stating that they would "not authorize access to her medical records."  Letter of Clyde Martin 7/10/06 (Exhibit 31).  On July 26, 2006, the Plaintiff signed power of attorney to her husband.  Plaintiff Power of Attorney (Exhibit 32).

On July 11, 2006, Christopher Holland, MD, FOH consultant, documented that he spoke to Dr. Frances Holland, the Plaintiff's psychologist, who advised that the Plaintiff was "at a breaking point," but confirmed the diagnosis (of depression and generalized anxiety) and the need for medical leave.  Letter of Dr. Christopher Holland 7/11/06 (Exhibit 33).

On July 26, 2006, the Plaintiff's psychologist again recommended that the Plaintiff extend her leave from work.  Letter of Dr. Frances Holland 7/26/06 (Exhibit 34).

In late October 2006, the Plaintiff's husband was notified by Ms. Chance that the Plaintiff had been absent for 479 hours of LWOP and 103 days from work, and that "her continuing absence is placing a considerable strain on the staff and their daily operations.  An

8

employee that is available for duty on a regular full-time position is needed in her position." The Plaintiff was also notified that LWOP will not be granted indefinitely and the Plaintiff needed to report to duty November 13, 2006. This notice provided that the Plaintiff "was required to report to her office on November 13, 2006, ready, willing and able to resume the duties of her position." Chance Letter 10/27/06 (Exhibit 35).

Subsequently, on November 8, 2006, the Plaintiff's psychologist by letter again advised that the Plaintiff was improving but that "even the simplest demands regarding her work situation appear to cause such distress that Ms. Martin is unable to cognitively process the demands." She concluded, "In my professional opinion, it would be detrimental to Ms. Martin's mental and physical health for her to return to her professional work in the Department of Health and Human Services at this time." Letter of Dr. Frances Holland 11/8/06 (Exhibit 36).

The Plaintiff was continued on LWOP for her documented health condition. Leave Records (Exhibit 29).

On November 14, 2006, the Plaintiff's husband filed Claim forms CA-2, CA-7, and CA-20 for Compensation for Worker's Compensation and the forms and cover letter were forwarded to Renee Davis, Worker's Compensation Specialist. For cause, the Plaintiff's husband reported that the Plaintiff's injury was caused by her being asked questions about her leave use, her receipt of two letters of reprimand and defamed character, and that the Plaintiff's filed several union and EEO complaints. He further stated that "by January 2006 Arthuretta began to show very strong symptoms of stress and was seen by numerous medical personnel." Letter of Clyde Martin 11/14/06 (Exhibit 37).

Mr. Martin did not provide the agency access to other medical documentation. Letter of Clyde Martin 7/10/06 (Exhibit 31).

9

In November 2006, Ms. Ridgely responded in detail to the allegations contained in the Plaintiff's worker's compensation claim by reiterating that the Plaintiff's leave was "sporadic" and that the Plaintiff received two letters of reprimand in March and May of 2005, she was advised of the Employee Assistance Program, and she denied allegations of mistreatment and office environment stressors.  Ridgely Worker's Comp. Response (Exhibit 38).

In a letter dated January 23, 2007, Joyce Cooper, Team Leader, Worker's Compensation Unit, notified the Plaintiff that she was not entitled to receive Continuation of Pay (COP) but explained worker's compensation claim procedures. Cooper Letter 1/23/07 (Exhibit 39).

The Plaintiff remained on sick leave and LWOP from June 19, 2006 until her removal July 1, 2007.  The Agency continued to grant LWOP under the Family Medical Leave Act (FMLA) until the Plaintiff exhausted this leave, and continued to accommodate the Plaintiff by approving LWOP until the Plaintiff's removal.  Leave Records (Exhibit 29).  The Plaintiff's continuing requests for extended leave were supported by documentation provided by her psychologist, Dr. Frances M. Holland.  Letters of Dr. Frances Holland (Exhibits 27, 34, and 36) The last medical opinion provided in May 2007 by Dr. Frances Holland advised that "it may be possible for Ms. Martin to return to a position in DHHS in a part-time capacity in 6-8 months: i.e. late September or early October if her current level of progress continues."   Letter of Dr. Frances Holland  5/23/07 (Exhibit 40).

On January 12, 2007, Ms. Ridgely proposed the Plaintiff's removal for medical inability to perform the duties of her position, based on the Plaintiff's extended medical absences. Proposed Removal (Exhibit 41).

On February 20, 2007,  the Plaintiff's attorney, challenged the Plaintiff's removal. Written Reply 2/20/07 (Exhibit 42).

In a decision letter on June 22, 2007, Linda Garvin, Principal Deputy Assistant Secretary for Administration and Management (ASAM), HHS, decided to uphold the proposed removal effective July 1, 2007.  In her decision, Ms. Garvin considered that the Plaintiff had not returned to work since June 19, 2006 due to a medical condition.  She considered that the Plaintiff's refusal to grant the agency permission to view her medical records limited the agency's review of her medical condition, her ability to work and the agency's ability to accommodate the Plaintiff.  She considered that the Plaintiff's psychotherapist indicated that the Plaintiff "may" return to work in six to eight months and that there was no indication that the Plaintiff could return to full duty or to return to work at all. She considered that the Plaintiff's response to the proposal did not address the reasons proposed. She considered that the Office of Small and Disadvantaged Business Utilization had been severely understaffed and needed the Plaintiff's services.  In reaching the decision to remove the Plaintiff, the deciding official based the decision on evidence of excessive leave supported by the medical documentation available.  The deciding official considered that the Plaintiff's medical inability to perform duties, as demonstrated by observed deficiencies in her attendance, adversely impacted the efficiency of the federal service.  In making this decision, the deciding official also determined that without assurance of the Plaintiff's return to work after having been out of work for nearly a year without a return to duty "in the near future," it was in the agency's best interests to remove the Plaintiff. Removal Decision (Exhibit 43).

The Plaintiff's claim for worker's compensation was denied by the Department of Labor on September 26, 2007.  The Department of Labor stated that the Plaintiff's claim was "denied because the evidence does not establish that you were injured in the performance of duty as

required for coverage under the Federal Employee's Compensation Act (FECA)."[2]  DOL Denial (Exhibit 44).

The Plaintiff filed for disability retirement with the Office of Personnel Management (OPM) in August 2007.  Disability Retirement Application (Exhibit 45).

In January 2008, OPM approved the Plaintiff's disability retirement application.  OPM Decision (Exhibit 46).

## Argument

### I.      Standards for Dismissal Pursuant to Fed.R.Civ.p.12(b)(1) and 12(b)(6)

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule  12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  Id.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v.

---

[2]  Congress provided a remedy in the Federal Employees Compensation Act (FECA) that is exclusively administrative. Congress has specifically foreclosed judicial review of determinations under the FECA, as 5 U.S.C. § 8128 (b) provides in pertinent part:

The action of the Secretary or his designee in allowing or denying a payment under this subchapter is –

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and,
(2) not subject to review by another official of the United States or by a Court by mandamus or otherwise.

Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355

U.S. 41, 47 (1957)); see also In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing

Twombly).  Hence, the focus is on the language in the complaint, and whether that language sets

forth sufficient factual allegations to support plaintiff's claims for relief.

      The court must construe the factual allegations in the complaint in the light most

favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived

from the facts as they are alleged in the complaint.  Barr v. Clinton, 370 F.3d 1196, 1199 (D.C.

Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

However, the Court need not accept any inferences or conclusory allegations that are

unsupported by the facts pleaded in the complaint.  Kowal, 16 F.3d at 1276.  Moreover, the

Court need not "accept legal conclusions cast in the form of factual allegations."  Id.

      These standards apply equally in employment cases.  See, e.g., Kassner v. Second Ave.

Delicatessen, Inc., 496 F.3d 229, 240 (2d Cir. 2007); EEOC v. Concentra Health Servs., Inc.,

496 F.3d 773 (7th Cir. 2007); Ofori-Tenkorang v. American Internat'l Group, Inc., 460 F.3d 296,

307 (2d Cir. 2006).  Although plaintiff need not specifically plead the facts supporting a *prima

facie* case, see Swierkiewicz v. Soreman, 533 U.S. 976 (2001), the Court is to rely on the factual

allegations in the complaint as pleaded and, along with reasonable inferences therefrom, draw

appropriate legal conclusions from those facts.  It does not appear, therefore, that simply

pleading "discrimination," per Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000), suffices to survive a motion to dismiss a complaint of employment discrimination.  See

Kassem v. Washington Hosp. Ctr., --- F.3d ---, 2008 WL 169784 (D.C. Cir. Jan. 22, 2008)

(citing Sparrow only for standard of appellate review and citing Twombly for standard on

motion to dismiss).

## II.    Legal Standard for Motion for Summary Judgment.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id. at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the party opposing summary judgment. Id. at 248. That is, if the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R.

14

Civ. P. 56(e). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). See also Brown v. Small, 2006 WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW) (same).

### III.  Discrimination Claims–Adverse Personnel Action

In discrimination claims against federal employers, a required element is some form of legally cognizable adverse personnel action by the employer. Brown v. Brody, 199 F.3d 446, 453 (D.C.Cir. 1999); Weigert v. Georgetown University, 120 F. Supp.2d 1, 17-18 (D.D.C. 2000). To establish an "adverse personnel action" there must be a significant change in the plaintiff's employment status--such as failing to hire, firing, failing to promote, or a decision causing a significant change in benefits. Id.

To guard against "judicial micromanagement of business practices," courts do not recognize "interlocutory or mediate decisions having no **immediate** effect upon employment" as adverse personnel actions. Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001)(the ultimate result of a performance evaluation is often speculative and should not be considered an adverse action if it does not affect an employee's grade or salary)(emphasis added) *citing to* Mungin v. Katten, Muchin & Zavis, 116 F.3d 1549, 1556 (D.C. Cir. 1997). In short, to be considered adverse a personnel action must have a "direct, measurable, and immediate effect," upon the complainant. Principi, at 819.

This court has held that summary judgment or dismissal is warranted when plaintiff fails to allege adverse personnel actions. See Baloch v. Norton, 2007 U.S. Dist. LEXIS 70718 (2007) (RMU) (granting summary judgment in favor of employer in a case involving sick leave notices,

suspension proposals, contacts with agency officials, letter of counseling, a reprimand, a

performance evaluation and yelling by a supervisor); <u>Woodruff v. Peters</u>, 2007 U.S. Dist. LEXIS

34127 2007 (RMU) (granting defendants' motion to dismiss plaintiff's due process claim and

defendants' motion for summary judgment with respect to plaintiff's age and disability

discrimination claims and his claim of retaliation in case involving a notice of reduction in pay

and termination of LWOP status) ("Plaintiff is unable to demonstrate that defendants have taken

any adverse actions against him, and he therefore fails to make out a prima facie case for age or

disability discrimination of for retaliation.").

      Plaintiff's claims with regard to her December 2004 performance appraisal, alleged delay

in processing a waiver regarding a salary overpayment, leave usage in October and November

2004, alleged management delays in responding to requests in 2004 and 2005 and alleged

management undermining of the Plaintif's performance of job duties do not constitute adverse

personnel actions.  With respect to the first issue, the Plaintiff alleges she was discriminated

against because Ms. Ridgely included a written comment in her performance evaluation without

providing an explanation.  This allegation does not affect a term or condition of her employment.

Courts have held that a sub-par evaluation does not rise to the level of an "adverse employment

decision;" hence, one written comment in an evaluation that resulted in the highest possible

rating would not be an "adverse employment decision."   <u>Gustovich v. AT&T Communications,</u>

<u>Inc.</u>, 972 F.2d 845, 847 (7th Cir. 1992); see <u>Brown v. Brody</u>, 199 F.3d 446, 453 (D.C.Cir. 1999)

(fully successful performance appraisal not adverse employment action).  Likewise, such actions

as delaying in the processing of a waiver request; granting leave without showing sympathy;

delaying in responding to requests for documentation; and  reassigning tasks when an employee

is on extended leave, do not effect a term or condition of the Plaintiff's employment and

therefore are not adverse personnel actions.

### IV.    Legal Standards Applicable to Claims of Employment Discrimination

In <u>Fogg v. Gonzales</u>, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, <u>inter</u>

<u>alia</u>, that the 1991 amendments to Title VII codified two alternative ways of establishing

liability for intentional discrimination: (1) a single motive theory requiring that the

plaintiff establish that discrimination was the sole or but for reason for the challenged

employment action; and (2)  mixed-motive theory requiring only that the plaintiff demonstrate

that discrimination played a motivating part or was a substantial factor in the employment

decision. <u>Id</u>. at 451. Under either theory, plaintiff must demonstrate discrimination by a

preponderance of the evidence ₃ and may rely on direct or circumstantial evidence to meet that

burden. <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Plaintiff may attempt to establish that he was the

victim of intentional discrimination on the basis of his race by relying on circumstantial

evidence analyzed using the scheme first set forth in <u>McDonnell-Douglas Corp. v. Green</u>,

411 U.S. 792 (1973).  Under that scheme, the plaintiff must first, by a preponderance of

the evidence, establish a prima facie case of discrimination. <u>See</u> <u>St. Mary's Honor Ctr.</u>

<u>v. Hicks</u>, 509 U.S. 502, 506 (1993).  If the employee succeeds, the employer then must

introduce evidence of a legitimate, nondiscriminatory reason for its action. <u>See</u>

<u>McDonnell Douglas</u>, 411 U.S. at 802.

In articulating a legitimate, non-discriminatory reason, the employer's burden is one of

---

³  " preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so. <u>Hopkins v. Price Waterhouse</u>, 737 F. Supp. 1202 (D.D.C. 1990), <u>*affirmed*</u> 920 F.2d 967 (D.C. Cir. 1990); <u>Metropolitan Stevedore Company v. Rambo</u>, 521 U.S. 121, 137 n.9 (1997).  "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose." <u>Id</u>.

production, not of proof, since the ultimate burden of persuading the court that the employer intentionally discriminated remains at all times with the employee. See Aka, 156 F.3d at 1288; Hicks, 509 U.S. at 507. The employer's burden is satisfied if it simply explains what it has done or produces evidence of a legitimate, non-discriminatory reason. Hicks, 509 U.S. at 509. The legitimate non-discriminatory reason need not be one with which the employee agrees. An employer may act for any reason, whether good or bad, so long as unlawful discrimination is not a motivating factor for the employers action. See Burdine, 450 U.S. at 259; Simmons v. Billington, 53 Emp. Prac. Dec. & 39, 994, 1989 WL 222729, at *3 (D.D.C. 1989). "[T]he issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers." Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted). The law does not make an employer liable just because the employer may have made a poor decision. See Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986). See Winston v. Smithsonian Science Info. Exch., Inc., 437 F. Supp. 456, 473 (D.D.C. 1977) ([A]n employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as racial or other discriminatory distinctions do not influence the decision.), aff'd, 595 F.2d 888 (D.C. Cir. 1979).

Once it is established that both parties have met their respective burdens of production (i.e., plaintiff by presenting a prima facie case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant. Hicks, 509 U.S. at 510. Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice." Desert Palace, Inc. 539 U.S. at 101 (citing 42 U.S.C. § 2000e-2(m)).

Alternatively, plaintiff can meet the ultimate burden by demonstrating that the

18

defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but for" reason for the challenged employment action. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 515-18.  This is a more difficult standard than the requirement under Section 2000e-2(m) to show that discrimination was a motivating factor.

At all times, the Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination.  <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53(1981).  A plaintiff must present substantial and credible evidence of discrimination in order to survive a motion for summary judgment.  <u>See</u> <u>Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); <u>Hastie v. Henderson</u>, 121 F. Supp.2d, 72, 77 (D.D.C. 2000), <u><em>affirmed</em></u>, No. 00-5423, 2001 WL 793715 (D.C. Cir. 2001) (To defeat a motion for summary judgment, a plaintiff cannot create a factual issue of pretext with mere allegations or personal speculation, but rather must point to genuine issues of material fact in the record. );  <u>Woodruff v. DiMario</u>, 164 F. Supp. 2d 1, 5 (D.D.C. 2001).  Additionally, there will be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." <u>Weigert v. Georgetown University</u>, 120 F. Supp. 2d 1, 22 (D.D.C. 2000).

In the single motive case <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

Certainly there will be instances where, although the plaintiff has

established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Whichever standard is employed, as we set forth below, the plaintiff fails to meet her burden of coming forward with evidence to create a triable issue with regard to her claim of discrimination based on race.

## V.     LEGAL STANDARD FOR RETALIATION CLAIM

Title VII provides, in pertinent part, that it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C.§ 2000e-3(a).

A prima facie case alleging retaliation under Title VII is established when an employee demonstrates that (1) she engaged in protected behavior; (2) she was subject to an adverse action by her employer; and (3) there is a causal link between the adverse action and the protected activity. Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985)(quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984); see also Carney v. American Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998); Thomas v. Nat'l Football League Players Ass'n, 131 F.3d 198, 202 (D.C. Cir. 1997).

Claims of retaliation are governed by the McDonnell Douglas burden-shifting framework. See Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999); Carney v. The American

20

University, 151 F.3d 1090, 1094 (D.C. Cir. 1998).  If the Plaintiff successfully shows that a retaliatory motive played a motivating part in an adverse employment decision, the employer can nevertheless avoid liability by demonstrating by a preponderance of the evidence that it would still have taken the same action absent a retaliatory motive. See Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53 (1989); Berger v. Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111, 1125 (D.C. Cir. 1999). "[An employer's] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).  Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of a doubt is insufficient. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Moreover, a plaintiff cannot always avoid summary judgment simply by showing the employer's explanation to be false. Aka v. Washington Hospital Center, 156 F.3d 1284, 1292 (D.C. Cir. 1998). See Reeves , 530 U.S. at  148 (2000) Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." Aka, 156 F.3d at 1293.  Here, even assuming arguendo that plaintiff established a prima facie case of retaliation, plaintiff fails to meet her burden of coming forward with evidence to create a triable issue of retaliation.

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases.  Though the Plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181

21

F.3d 1342, 1346 (D.C. Cir. 1999) (quoting <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 464 (7th

Cir. 1986)).  To the contrary, a court "may not 'second-guess an employer's personnel decision

absent demonstrably discriminatory motive.'" <u>Fischbach v. District of Columbia Dep't of

Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton v. Weinberger</u>, 696 F.2d 94,

100 (D.C. Cir. 1982)). <u>*See also*</u>, <u>Barnette v. Chertoff</u>, 453 F. 3d 513 (D.C. Cir. 2006).

### VI.  Issues in EEO Complaint

As noted above, Plaintiff's claims with regard to the December 2004 appraisal, an

alleged delay in processing a waiver request regarding salary overpayment, leave usage in

October and November 2004, an alleged management delay in responding to requests in 2004

and 2005 and alleged management undermining of the Plaintiff's responsibilities are not legally

cognizable adverse personnel actions. Even if they were cognizable claims,  Plaintiff cannot

establish a prima  facie case of discrimination or retaliation with respect to any of these issues.

### 1.  December 2004 Performance Appraisal

The Plaintiff's allegation with regard to this December 2004 performance appraisal is

clearly not a complaint about the rating because she received the highest rating available, "Fully

Successful."  2004 Performance Evaluation (Exhibit 17).  Instead, Plaintiff challenges only that

Ms. Ridgely made the "team player" comment without an explanation.  Plaintiff Aff. (Exhibit 3,

p. 4).

In the first instance, Plaintiff cannot establish a prima  facie case of race discrimination

with respect to this issue because she cannot identify another employee outside of her protected

class who was treated differently.  Moreover, she cannot establish a prima  facie case of reprisal

discrimination because the Plaintiff had not yet filed an EEO complaint when the evaluation was

written. Indeed, the December 2004 evaluation was given prior to Plaintiff prior to her initial

contact with the EEO counselor on January 14, 2005. Accordingly, due to this chronolgy,

Plaintiff cannot establish any causal relationship between the protected activity and the alleged

advers action.

Notwithstanding the Plaintiff's failure to establish a prima facie case of discrimination or

retaliation, with regard to the December 2004 performance appraisal, the agency has articulated

a legitimate non-discriminatory reason for its action. Ms. Ridgely stated that the Plaintiff

> did not support the Department's initiatives. [The Plaintiff] publicly criticized
> initiatives both within and outside of the Department. [The Plaintiff] continually
> challenged office initiatives after a final decision had been made. This did not
> promote esprit'd corps amongst our small staff who need to work closely and
> cooperatively to support our mission.

Ridgely Aff. (Exhibit 2, p. 2). To date, Plaintiff has presented no evidence that Ms Ridgely's

reason was a pretext for discrimination or retaliation. Indeed, the Plaintiff has offered no

evidence for her belief that the real reason for this statement was based on her race or any

protected activity.

### 2. <u>Delay in Processing Waiver Request Regarding Salary Overpayment</u>

The Plaintiff complains about the length of time that it took to process her waiver

request regarding a salary overpayment . The waiver was ultimately denied, because the Plaintiff

owed these funds and was put on notice that she was overpaid. The Plaintiff cannot establish a

prima facie case of discrimination, because she cannot identify a similarly situated employee

outside of her protected class whose similar request was not delayed. Moreover, a prima facie

case of reprisal cannot be established because Ms. Ridgely was not the management official

involved in the processing of her waiver request; and, there is no inference of a causal

connection between this situation and any protected activity.

Notwithstanding the Plaintiff's inability to establish prima facie cases of race or reprisal discrimination, the numerous emails addressing the issue indicate that many individuals had to process this request which delayed the process. Waiver Request Emails (Exhibit 47). The Plaintiff offers no evidence of pretext with regard to the handling of this waiver request.

**3. Leave Usage in October and November 2004**

The Plaintiff admits that her complaint with respect to this issue is that while Ms. Ridgely granted all of the leave requested, she did not show enough sympathy. The Plaintiff stated the following in her affidavit. "[Ms. Ridgely] approved leave for both instances. She, however, failed to sympathize with or support me during my troubles." Plaintiff Aff. (Exhibit 3, p. 5). The Plaintiff cannot establish a prima facie case of discrimination because she cannot identify a similarly situated person outside of her protected class who was treated differently. The reprisal claim cannot apply to this allegation because it was prior to the date of Plaintiff's initial contact with the EEO counselor.

In addition, Ms. Ridgely performed her management responsibilities and approved the leave. Ms. Ridgely further stated that she did in fact show both sympathy and support to the Plaintiff. Ms. Ridgely stated the following in her follow-up responses:

> The email records reflect that I specifically asked about the condition of her son, Justin and how both Justin and [the Plaintiff] were doing. I definitely empathized with what she was experiencing at the time. The record also reflects that when I learned about the death of her grandchild I went into [the Plaintiff's] office and shared with [the Plaintiff] the loss of my own infant daughter in 1980. This is a very painful experience and not something that I readily or easily share with people. I shared my experience out of compassion for [the Plaintiff] and her family.

Ridgely Follow-up Interview (Exhibit 2, p. 7). The Plaintiff has provided no evidence that Ms. Ridgely's explanation was pretext for either her claims of race or reprisal. Hence, any perceived

24

lack os sympathy is simply irrelevant.

### 4. __Management Delay in Responding to Requests in 2004 and 2005__

The Plaintiff alleges that there were excessive delays in responding to her request for a performance appraisal documentation and a copy of her personnel folder.  Although the Plaintiff made these assertions in her EEO Complaint, she failed to provide any information or factual support for these assertions.  Thus, the Defendant is unable to ascertain whether the Plaintiff has established a prima  facie case with regard to these two assertions.

Plaintiff also fails to establish a prima facie case of race discrimination with regard to the alleged delay of her request for outside employment.  The Plaintiff cannot identify a similarly situated employee outside of her protected class whose request for outside employment was not delayed.  In addition, Mr. Weisman,  the ethics official, requested information from the Plaintiff before he made his determination.  But instead of providing the information, Plaintiff challenged the request. Accordingly, Plaintiff's own actions contributed to the delay. There is no indication that Mr. Weisman's request for information or any of his actions related to the Plaintiff's race.

In addition, the Plaintiff cannot establish a prima  facie case of reprisal discrimination. There is no evidence that Mr. Weisman was involved in or aware of Plaintiff's prior EEO action.

With respect to the Plaintiff's allegation that there was a delay in the processing of the Plaintiff's request for a detail, the undisputed facts demonstrate that there was no such delay. The Plaintiff made her request on July 29, 2005 and asked for a response by August 5, 2005. Ms. Ridgely responded orally to the request on July 29, 2005 and in writing on August 5, 2005. See Ridgely Response (Exhibit 26).  Thus, there is no basis for claims of discrimination based on race or reprisal with regard to the alleged delay in processing  Plaintiff's request for a detail.

**5. Management Undermining Ability to Perform Job Responsibilities**

The Plaintiff presented no information or factual import for her allegation concerning undermining actions by management against her. Thus, there is no basis for a claim of discrimination based on race or reprisal.

**6. Management Alienated Complainant and Reassigned Her Meaningful Tasks**

The Plaintiff alleges that while she was on LWOP status, some of her tasks were reassigned and that when she returned she was given menial tasks. The Plaintiff cannot establish a prima facie case of race discrimination with respect to this issue because she cannot identify a similarly situated person outside of her protected class who was treated differently. There were no other employees under Ms. Ridgely's supervision who were on extended leave.

The Plaintiff may be able to make a prima facie showing for the reprisal claim, but the agency has articulated a legitimate non-discriminatory reason for its action. While the Plaintiff was on extended leave, the work had to be completed; therefore, Ms. Ridgely reassigned the work. Ms. Ridgely stated the following in her affidavit:

> A single task, the report for the Small Business Regulatory Enforcement Fairness Act) was reassigned to another co-worker in October 2004, while [the Plaintiff] was out on FMLA. [The Plaintiff's] duties which covered the 8(a), Small Disadvantaged Business, Subcontracting, the new Electronic Subcontract Reporting System and the Small Business Manual remained the same and were never reassigned.

Ridgely Aff. (Exhibit 2, p.3). In addition, Ms. Ridgely stated that two duties were previously reassigned to the Plaintiff when another coworker retired; however, those duties were transferred back when the position was finally back-filled. Id. The Plaintiff has presented no evidence that Defendant's legitimate non-discriminatory reason was pretext for discrimination based on race or reprisal for protected activity.

7.  **Management retaliation**

The Plaintiff provided no information or factual support for this general allegation.  Thus, there is no basis for a claim of discrimination based on race or reprisal.

VII.  **The Removal**

1.  **Plaintiff's Allegation of Race Discrimination**

The Plaintiff fails to establish a prima  facie case of race discrimination with respect to her removal.  The Plaintiff cannot identify an employee outside of her protected class who was medically unable to perform his or her duties and who the agency did not remove.  "[T]o be deemed 'similarly-situated', the individual with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."   Phillips v. Holladay Prop. Services, 937 F.Supp. 32, 37 (D.D.C. 1996) (quoting Mitchell v. Toledo Hosp., 964 F. 2d 577, 583 (6th Cir. 1992).  The Plaintiff cannot identify such an employee and has therefore failed to establish a prima  facie case of race discrimination.

Even assuming, however, that the Plaintiff can establish a prima facie case of discrimination, the agency has articulated a "legitimate nondiscriminatory reason" for the removal - the Plaintiff's medical inability to perform her duties. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Because the agency's burden is merely one of production, Dr. Frances Holland's letter stating that the Plaintiff is unable to return to work is sufficient for the agency to meet its burden. F. Holland Letter (Exhibit 40).  See Mastro v. Potomac Electric Power Co., 447 F.3d 843, 854 (D.C.Cir.2006).  The Plaintiff offers no evidence to establish that this reason is pretext for discrimination.  To the contrary, the

27

Plaintiff has stipulated that she was medically unable to perform her duties when she was removed from her position. The Plaintiff's application for disability retirement to the Office of Personnel Management supports Defendant's reason that the Plaintiff's removal was based on a medical inability to perform her duties. See Plaintiff's Application (Exhibit 45)

. In a factually similar case, Duncan v. Harvey, 479 F.Supp.2d 125 (D.D.C. 2007), the District Court granted summary judgment. Duncan, an African American employee was medically unable to perform her duties and removed from her position. Ms. Duncan challenged the removal and alleged discrimination based on race and reprisal as the Plaintiff alleges in the instant case. The District Court held that Ms. Duncan failed to establish a prima facie case of race discrimination because she could not identify a similarly situated employee outside of her protected class who was medically unable to perform her duties and who remained employed at the agency. The District Court stated "to survive summary judgment the plaintiff must show that 'a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Duncan, 479 F.Supp.2d at 135 (quoting Holcomb v. Powell, 433 F.3d 889, 896 (D.C.Cir.2006)). The District Court further stated that the "plaintiff, however, has produced no evidence which would support her claim that defendant's stated reason for terminating her was pretextual." See Mastro, 447 F.3d at 855. Consequently, defendant's request for summary judgment as to plaintiff's race discrimination claim is granted." With respect to the reprisal claim in Duncan, the District Court also granted summary judgment, and held that the period between the protected activity and the removal (thirteen months) was too long and that the Plaintiff failed to provide evidence that the articulated reason (medical inability to perform duties) was pretext for discrimination. Duncan, 479 F. Supp.2d at 135.

In another factually similar case, <u>Smythe v. Potter</u>, 2007 WL 1231690 (E.D. Mo.), the court granted summary judgment to the Postal Service.  In that case, an African American employee alleged discrimination based on race and reprisal in a case where he Plaintiff was removed for medical inability to perform his duties.  The court stated that the

> undisputed evidence shows that, after having received information from plaintiff's health care providers that plaintiff's health condition prevented him from working for USPS and that plaintiff would be unable to work for USPS at any time in the future, USPS determined to separate plaintiff from his employment inasmuch as he was unable to perform his job duties. Plaintiff has presented no evidence to the Court demonstrating that any other Postmaster or postal service employee not within his racial class remained employed with the USPS despite being prevented from engaging in such work on account of their health condition.

<u>Smythe</u>, 2007 WL 1231690 at 8.  With respect to Smythe's retaliation claim, the District Court made a similar ruling.  The District Court stated that the agency's legitimate non-discriminatory reason for the removal was the plaintiff's medical provider's opinion that the plaintiff could not work.  It added that "the Plaintiff presents no evidence that discredits these opinions nor defendant's reason to rely on them in its determination to separate plaintiff from employment on account of his inability to perform the work."  <u>Id.</u> at 10.  <u>See</u> <u>also</u>,  <u>Graham v. Big Lots Stores</u>, 2005 WL 1662054 (E.D.Mo.), July 12, 2005.

Here, the Plaintiff cannot establish a prima  facie case of race discrimination.  Nor can the Plaintiff provide evidence that the agency's articulated reason for her removal was pretext for discrimination.

### VII. Plaintiff's Claim of Retaliation

Similarly, the Plaintiff fails to establish a prima facie case of reprisal. The Plaintiff has filed formal EEO complaints on March 24, 2005 and on April 24, 2006 against Ms. Ridgely for hostile treatment. However Plaintiff cannot establish that a nexus exists between her EEO

activity and her removal.  In fact, the removal was a year and three months (fifteen months) after

her last EEO complaint was filed.  This is a significant time lapse, which precludes her

retaliation claim.

Indeed, the considerable time lapse involved here is simply insufficient as a matter of law

to establish a causal connection between the protected activity and a retaliatory action.  As this

Court stated in Brodetski v. Duffey, 199 F.R.D. 14, 19-20 (D.D.C. 2001):

> A causal connection may be inferred "by showing that the employer had
> knowledge of the employee's protected activity, and that the adverse personnel
> action took place shortly after that activity." Mitchell, 759 F.2d [60, 86 (D.C. Cir.
> 1985)]. By showing both knowledge and proximity in time, plaintiff may
> establish the causal connection needed to make a prima facie case of retaliation.

Although courts have not established the maximum time lapse between protected Title VII

activity and alleged retaliatory actions for establishing a causal connection, courts generally have

accepted time periods of a few days up to a few months and seldom have accepted time lapses

outside of a year in length.

Shortly after Brodetski, the Supreme Court had the opportunity to review the connection

between a complainant's "protected activity" and actionable conduct by the complainant's

employer, and how the two activities must be close temporally to establish a claim of retaliation.

The Court stated that "[t]he cases that accept mere temporal proximity between an employer's

knowledge of protected activity and an adverse employment action as sufficient evidence of

causality to establish a prima facie case uniformly hold that the temporal proximity must be

'very close.'...[a]ction taken (as here) 20 months later suggests, by itself, no causality at all."

Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001)(citations omitted).

Consistent with Breeden, the considerable lapse in time between Plaintiff's activity

between 2004 and 2005 and the purported wrongdoing in June 2007 is simply insufficient as a

matter of law to establish a retaliation claim. See Clark County School District v. Breeden, 532 U.S. 268, 274-275 (2001) (without more, twenty months suggests "no causality at all."); Mayers v. Laborers Health & Safety Fund, 478 F.3d 364, 369 (D.C. Cir 2007)(eight or nine month gap too long); see also, e.g., Richmond v. Oneok, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (three months insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four months insufficient); Mitchell v. Baldridge, 759 F. 2d 80, 86 (D.C. Cir. 1985) (adverse action must take place "shortly" after protected activity); Sullivan v. Powell, 300 F. Supp. 2d 85, 92-93 (D.D.C. 2004) (over three months and fifteen months both insufficient); Ball v. Tanoue, 133 F. Supp. 84, 91-92 (D.D.C. 2002) (sixteen months insufficient); Devera v. Adams, 874 F. Supp. 17, 21  (D.D.C. 1995) (eight months not strongly suggestive of causal link); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (one year too long); Parrott v. Cheney, 748 F. Supp. 312, 318-319 (D. Md. 1989) (four months too long); Juarez v. Ameritech Mobile Communications, Inc., 746 F. Supp. 798 (N.D. Ill. 1990) (almost 6 months insufficient), aff'd per curiam, 911 F. 2d 731 (6th Cir. 1990).

    In addition, the responsible management official in her EEO complaint was Ms. Ridgely, not Ms. Garvin.  Ms. Garvin, who removed the Plaintiff from her position, was not named in the EEO complaint and was not involved in any of the allegations. Hence, this is also another reason Plaintiff cannot establish a prima facie case of reprisal.

    Further, the Plaintiff stipulates that as charged by the agency she was medically unable to perform the duties of her position at the time of her removal.  Disability Application (Exhibit 45).  Therefore, even if the Plaintiff had not filed an EEO complaint, the agency would have removed  Plaintiff because she was medically unable to perform her duties. In sum, there is simply no basis for Plaintiff's reprisal claim.

**VIIII.**    <u>**Conclusion**</u>

Based on all the foregoing, the Plaintiff's complaint should be dismissed or in the

alternative summary judgment should be granted for Defendant.

Respectfully  submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


___/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., E - 4106
Washington, D.C. 20530
(202) 514-7224


Of Counsel:
MONICA DAVY
Senior Attorney
Office of the General Counsel
Department of Health and Human Services

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**ARTHURETTA  L. HOLMES-MARTIN,**       )
                                        )
   **Plaintiff,**        )
                                        )
  **v.**                       )    **Civil Action No.: 07-2128 (RMU)**
                                        )
**MICHAEL O. LEAVITT, Secretary**       )
**Department of Health and Human Services,**  )
                                        )
   **Defendant.**         )
_____)

### STATEMENT OF MATERIAL FACTS

  Pursuant to Local Rule 7.(h), defendant respectfully submits the following Statement of Material Facts Not in Dispute.

  1. The Office of Small and Disadvantaged Business Utilization (OSDBU), Office of Grants and Acquisition Management in the Office of the Secretary, Department of Health and Human Services (HHS), is responsible for the overall management of the Department's preferential procurement programs including Section 8(a), the Women's Business Program, and the Small and Disadvantaged Business Programs.  HHS  Response (Exhibit 1).

  2. The Director of OSDBU is Debbie Ridgely.   Affidavit of Debbie Ridgely (Ridgely Aff.) (Exhibit 2. p.1).

  3. On January 2, 2000, the Plaintiff began her employment as a Procurement Analyst, GS-1102-14, in OSDBU.   Affidavit of Arthuretta Holmes-Martin (Plaintiff Aff) (Exhibit 3).  In the fall of 2004, the Plaintiff was counseled by her first-level supervisor, Ms. Ridgely with regard to her excessive unscheduled leave use and failure to submit leave requests in the system.  Ridgely Email 10/1/04 (Exhibit 4).

4.    The Plaintiff provided a lengthy response in an October 5, 2004 email and stated that she was unhappy because of the "disingenuous promises and abandonment of support to small businesses by Government officials" and "how you treat me and others."  The Plaintiff also complained about Ms. Ridgely's management style, lack of support and training, "micro-managing," "limiting creativity," and lack of courtesy.  She also stated that she was frustrated at work and would plan an "exit strategy." Plaintiff Email 10/5/04 (Exhibit 5).

5.    In March 2005, Ms. Ridgely warned the Plaintiff about inappropriate behavior, standards of conduct, leave and performance concerns.  Ridgely Memo 3/11/05 (Exhibit 6).

6.    The Plaintiff made initial contact with the EEO office on January 14, 2005.  2005 Counselor's Report (Exhibit 7).  She filed her first EEO complaint (OSH-014-05) on March 24, 2005. Acceptance Letter 4/5/07 (Exhibit 8).  The Plaintiff filed her second complaint (OSH-010-06) on April 24, 2006. Acceptance Letter 4/24/06 (Exhibit 9).  The responsible management official for both claims was Debbie Ridgely. Counselor's Report 12/11/05 (Exhibit 10).

7.    During her initial meeting with the EEO counselor, the Plaintiff stated that "she was discriminated against based on reprisal (prior EEO activity) when on November 18, 2005, she was sent threatening and hostile emails from" Ms. Ridgely.  She also claimed that authoritative responsibilities were taken away from her.  Counselor's Report 12/23/05 (Exhibit 10, p. 4).

8.    An informal resolution could not be reached during this stage. The agency attempted to move toward the next step in processing the complaint.  Right to File Letter 4/17/2005 (Exhibit 11).  During this process, the EEO Director sent two letters to the Plaintiff asking her to be more specific in her allegations so that the complaint could be properly investigated. Shorts letters 10/11/05 (Exhibit 12) and 10/20/05 (Exhibit 13).  The Plaintiff never responded to

2

this correspondence.  Subsequently, the processing of the complaint was placed on hold due to

other failed attempts to resolve the case and because the Plaintiff had three different

representatives. Shorts Letter to OGC 11/10/05 (Exhibit 14).

      9.    Ultimately, the EEOC administrative judge demanded that the agency accept the

issues as they were initially stated and to conduct an investigation.  EEOC Order 8/24/06

(Exhibit 15).  The following issues were accepted:

> The complainant claimed she was discriminated against based on her sex
> (female), color (black), race (African American) and reprisal for exercising her
> right to Family Medical Leave and being subjected to a hostile work environment
> when:
>
> 1.) Complainant's performance appraisal rating of Fully Successful with written
> supplement received on December 14, 2004;
>
> 2.) Management's delay in processing Complainant's waiver request regarding salary
> overpayment in November 2004;
>
> 3.) Leave usage in October and November 2004;
>
> 4.) Management's excessive delay responding to Complainant's requests for
> performance appraisal documentation (December 2004; 2005) copy of her personnel
> folder (December 2004), approval of outside employment (February, April and June
> 2005) and approval to accept a six-month detail to another office (July 2005);
>
> 5.) Management undermined Complainant's ability to perform her job responsibilities;
>
> 6.) Management alienated Complainant from her co-workers and reassigned her
> meaningful tasks to others in the office (November 2004-June 2006); and
>
> 7.) Management retaliated against Complainant for openly opposing employment
> discrimination.

Acceptance Letter, 4/5/07 (Exhibit 16)

      10.    For the 2004 performance rating, the Plaintiff received the highest rating

available, Fully Successful.  2004 Performance Plan (Exhibit 17).  Ms. Ridgely provided a full

page of complimentary comments on this rating and ended the narrative with the following

comment,  "An area of improvement is to become a better 'team player'."  Performance

Evaluation (Exhibit 17, p. 11).

11.     The Plaintiff's specific complaint was that Ms. Ridgely made this statement

without providing an explanation.  The Plaintiff stated in her affidavit, " I filed a complaint

because Ms. Ridgely refused to define what she meant by my not being a team player."  Plaintiff

Aff. (Exhibit 3, p. 4).

12.     While the Plaintiff was on leave without pay, she was improperly paid for a

federal holiday, October 11, 2004.  Ridgely Aff. (Exhibit 2,  p. 2); Plaintiff Aff. (Exhibit 3, p. 4);

Plaintiff Rebuttal Aff. (Exhibit 18, p. 2).

13.     The agency notified the Plaintiff of this error on November 12, 2004.  The agency

requested reimbursement of this overpayment of $245.05 on January 3, 2005.  Overpayment

Collection Notice (Exhibit 19, p. 3).

14.     On January 20, 2005, the Plaintiff requested a waiver of the overpayment because

it occurred through administrative error.  Waiver Request (Exhibit 20).

15.     On January 11, 2006, the waiver request was denied by the Agency.  Denial of

Waiver of Overpayment (Exhibit 21)

16.     In September and October 2004, the Plaintiff took Family Medical Leave

(FMLA) to take care of her disabled son.  Plaintiff Aff. (Exhibit 3, p. 4).

17.      Management approved all of the Plaintiff's request for use of FMLA leave when

it was requested.  Ridgely Aff. (Exhibit 2, pp. 3-4).

18.     The Plaintiff submitted a request for outside employment in April 2005.  Plaintiff

4

Aff. (Exhibit 3, p. 6).

19.     On June 1, 2005, Marc Weisman, the ethics official responsible for reviewing such requests asked for additional information from the Plaintiff in order to make a conflict of interest determination.  Weisman Email 6/1/05 (Exhibit 22).

20.     On June 3, 2005, the Plaintiff challenged Mr. Weisman's authority to review her request.  Plaintiff Email 6/3/05 (Exhibit 23).

21.     As of June 29, 2005, the Plaintiff had failed to submit the information requested to make a conflict of interest determination.  Weisman Memo 6/29/05 (Exhibit 24).

22.     On July 29, 2005, the Plaintiff requested that she be approved for a six-month detail to the Office of Minority Health beginning September 1, 2005.  In this written request, the Plaintiff asked for a response by August 5, 2005.  Plaintiff's Detail Request (Exhibit 25).

23.     On July 29, 2005, Ms. Ridgely had a conversation with the Plaintiff and denied this request.  Ms. Ridgely memorialized the conversation in a memorandum dated August 5, 2005.  Ridgely Response Memo (Exhibit 26, pp 1-3).

24.     While the Plaintiff was on LWOP as requested under FMLA, "a single task (the report for the Small Business Regulatory Enforcement Fairness Act) was reassigned to another co-worker.  The Plaintiff's duties which covered the 8(a), Small Disadvantaged Business, Subcontracting, the new Electronic Subcontract Reporting System and the Small Business Manual remained the same and were never reassigned." Ridgely Aff. (Exhibit 2, p. 4).

25.     The Plaintiff was asked to "take on the Women's Business Program as well as the Service-Disabled Veteran-Owned Business program for the Department, when another employee retired.  Those two duties were transferred back in June 2006, when the position was finally back-filled."  Id.

26.    In a letter dated June 16, 2006, the Plaintiff's psychologist, Dr. Frances M. Holland, advised that the Plaintiff had been under her treatment for "*several years*" (italics added for emphasis) and that "[t]reatment was necessary due in part to episodes of Major Depression and Generalized Anxiety Disorder induced by extended stressful conditions, particularly in her work situation."  She added, "[t]his exacerbation of symptoms, in turn, has necessitated increasing her medication in order to allow even minimal functioning.  It is my understanding that she is using an increased amount of sick leave and leave without pay when anxiety and depression render her incapable of functioning."  She asked that the Plaintiff be "given a medical leave of absence immediately. The duration of this leave should be not less than 30-45 days." Letter of Dr. Frances Holland 6/16/06 (Exhibit 27).  On June 19, 2006, the Plaintiff went on medical leave. Chance Letter 10/27/06 (Exhibit 28); Leave Records (Exhibit 29)

27.    Ms. Ridgely approved both sick leave (SL) and leave without pay (LWOP) as requested by the Plaintiff's medical provider.  Leave Records (Exhibit 29)

28.    On June 21, 2006, Rachel Chance, Human Resources Specialist, notified the Plaintiff of her entitlement to leave under the Family Medical Leave Act (FMLA) and notified the Plaintiff that she was forwarding the medical note from Dr. Frances Holland to the Federal Occupational Health (FOH) consultant for medical review for her request for extended leave. She also requested that the Plaintiff provide a medical release form so that FOH could review her medical records to determine the extent to which the agency needed to provide accommodations. Chance Email 6/21/06 (Exhibit 30).

29.    In a letter dated July 10, 2006, the Plaintiff's husband, Clyde Martin, wrote a letter to Ms. Chance, stating that they would "not authorize access to her medical records." Letter of Clyde Martin 7/10/06 (Exhibit 31).  On July 26, 2006, the Plaintiff signed power of

6

attorney to her husband.  Plaintiff Power of Attorney (Exhibit 32).

30.    On July 11, 2006, Christopher Holland, MD, FOH, consultant, documented that he spoke to Dr. Frances Holland, the Plaintiff's psychologist, who advised that the Plaintiff was "at a breaking point," but confirmed the diagnosis (of depression and generalized anxiety) and the need for medical leave.  Letter of Dr. Christopher Holland 7/11/06 (Exhibit 33).

31.    On July 26, 2006, the Plaintiff's psychologist again recommended that the Plaintiff extend her leave from work.  Letter of Dr. Frances Holland 7/26/06 (Exhibit 34).

32.    In late October 2006, the Plaintiff's husband was notified by Ms. Chance that the Plaintiff had been absent for 479 hours of LWOP and 103 days from work, and that "her continuing absence is placing a considerable strain on the staff and their daily operations.  An employee that is available for duty on a regular full-time position is needed in her position."  The Plaintiff was also notified that LWOP will not be granted indefinitely and the Plaintiff needed to report to duty November 13, 2006.  This notice provided that the Plaintiff "was required to report to her office on November 13, 2006, ready, willing and able to resume the duties of her position." Chance Letter 10/27/06 (Exhibit 35)

33.    Subsequently, on November 8, 2006, the Plaintiff's psychologist by letter again advised that the Plaintiff was improving but that "even the simplest demands regarding her work situation appear to cause such distress that Ms. Martin is unable to cognitively process the demands." She concluded, "In my professional opinion, it would be detrimental to Ms. Martin's mental and physical health for her to return to her professional work in the Department of Health and Human Services at this time."  Letter of Dr. Frances Holland 11/8/06 (Exhibit 36).

34.    The Plaintiff was continued on LWOP for her documented health condition. Leave Records (Exhibit 29)

35.     On November 14, 2006, the Plaintiff's husband filed Claim forms CA-2, CA-7, and CA-20 for Compensation for Worker's Compensation and the forms and cover letter were forwarded to Renee Davis, Worker's Compensation Specialist. For cause, the Plaintiff's husband reported that the Plaintiff's injury was caused by her being asked questions about her leave use, her receipt of two letters of reprimand and defamed character, and that the Plaintiff's filed several union and EEO complaints. He further stated that "by January 2006 Arthuretta began to show very strong symptoms of stress and was seen by numerous medical personnel." Letter of Clyde Martin 11/14/06 (Exhibit 37).

36.     Mr. Martin did not provide the agency access to other medical documentation. Letter of Clyde Martin 7/10/06 (Exhibit 31)

37.     In November 2006, Ms. Ridgely responded in detail to the allegations contained in the Plaintiff's worker's compensation claim by reiterating that the Plaintiff's leave was "sporadic" and that the Plaintiff received two letters of reprimand in March and May of 2005, she was advised of the Employee Assistance Program, and she denied allegations of mistreatment and office environment stressors. Ridgely Worker's Comp. Response (Exhibit 38).

38.     In a letter dated January 23, 2007, Joyce Cooper, Team Leader, Worker's Compensation Unit, notified the Plaintiff that she was not entitled to receive Continuation of Pay (COP) but explained worker's compensation claim procedures. Cooper Letter 1/23/07 (Exhibit 39).

39.     The Plaintiff remained on sick leave and LWOP from June 19, 2006 until her removal July 1, 2007. The Agency continued to grant LWOP under the Family Medical Leave Act (FMLA) until the Plaintiff exhausted this leave, and continued to accommodate the Plaintiff by approving LWOP until the Plaintiff's removal. Leave Records (Exhibit 29). The Plaintiff's continuing requests for extended leave were supported by documentation provided by her psychologist, Dr. Frances M. Holland. Letters of Dr. Frances Holland (Exhibits 27, 34, and 36)

8

40.     The last medical opinion provided in May 2007 by Dr. Frances Holland advised that "it may be possible for Ms. Martin to return to a position in DHHS in a part-time capacity in 6-8 months: i.e. late September or early October if her current level of progress continues." Letter of Dr. Frances Holland  5/23/07 (Exhibit 40)

41.     On January 12, 2007, Ms. Ridgely proposed the Plaintiff's removal for medical inability to perform the duties of her position, based on the Plaintiff's extended medical absences.  Proposed Removal (Exhibit 41).

42.     On February 20, 2007, David H. Shapiro, the Plaintiff's attorney, challenged the Plaintiff's removal. Written Reply 2/20/07 (Exhibit 42)

43.     In a decision letter on June 22, 2007, Linda Garvin, Principal Deputy Assistant Secretary for Administration and Management (ASAM), HHS, decided to uphold the proposed removal effective July 1, 2007.  In her decision, Ms. Garvin considered that the Plaintiff had not returned to work since June 19, 2006 due to a medical condition.  She considered that the Plaintiff's refusal to grant the agency permission to view her medical records limited the agency's review of her medical condition, her ability to work and the agency's ability to accommodate the Plaintiff.  She considered that the Plaintiff's psychotherapist indicated that the Plaintiff "may" return to work in six to eight months and that there was no indication that the Plaintiff could return to full duty or to return to work at all. She considered that the Plaintiff's response to the proposal did not address the reasons proposed. She considered that the Office of Small and Disadvantaged Business Utilization had been severely understaffed and needed the Plaintiff's services.  In reaching the decision to remove the Plaintiff, the deciding official based the decision on evidence of excessive leave supported by the medical documentation available. The deciding official considered that the Plaintiff's medical inability to perform duties, as

9

demonstrated by observed deficiencies in her attendance, adversely impacted the efficiency of the federal service.  In making this decision, the deciding official also determined that without assurance of the Plaintiff's return to work after having been out of work for nearly a year without a return to duty "in the near future," it was in the agency's best interests to remove the Plaintiff. Removal Decision (Exhibit 43)

44.     The Plaintiff's claim for worker's compensation was denied by the Department of Labor on September 26, 2007.  The Department of Labor stated that the Plaintiff's claim was "denied because the evidence does not establish that you were injured in the performance of duty as required for coverage under the Federal Employee's Compensation Act (FECA)." DOL Denial (Exhibit 44).

45.     The Plaintiff filed for disability retirement with the Office of Personnel Management (OPM) in August 2007.  Disability Retirement Application (Exhibit 45).

46.     In January 2008, OPM approved the Plaintiff's disability retirement application. OPM Decision (Exhibit 46).

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


_____/s/_____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
555 4th Street, N.W., E - 4106
Washington, D.C. 20530
(202) 514-7224



Of Counsel:
MONICA DAVY
Senior Attorney
Office of the General Counsel
Department of Health and Human Services

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**ARTHURETTA L. HOLMES-MARTIN,**        )
                                        )
    **Plaintiff,**      )
                                        )
    **v.**             )    **Civil Action No.: 07-2128 (RMU)**
                                        )
**MICHAEL O. LEAVITT,   Secretary**     )
    **Department of Health and Human** )
    **Services,**       )
                                        )
    **Defendant.**      )
_____)

### <u>ORDER</u>

UPON CONSIDERATION of Defendant's Motion to Dismiss, or in the Alternative, for

Summary Judgment, any Opposition thereto, and for good cause shown,  it this _____ day of

_____ , 2008.

ORDERED, that the said motion should be and hereby is granted; and it is

FURTHER ORDERED that Plaintiff's complaint be and hereby is dismissed, and

summary judgment entered for Defendant.


               _____
               UNITED STATES DISTRICT JUDGE

Copies to:

**Attorney for Defendant**          **Plaintiff's Counsel**
Wyneva Johnson             David Shapiro
555 Fourth Street, N.W. E-4106      Swick & Shapiro, P.C.
Washington, D.C. 20530           1225 Eye Street, N.W., Suite 1290
                                 Washington, D.C. 20005-3914