# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ARTHURETTA L. HOLMES-MARTIN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-2128 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| MICHAEL O. LEAVITT, | : | | |
| in his official capacity as Secretary of | : | | |
| Health and Human Services, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS; DENYING THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

## I. INTRODUCTION

This case comes before the court on the defendant's motion to dismiss, or, in the

alternative, for summary judgment. The plaintiff, Arthuretta Holmes-Martin, brings suit against

Michael O. Leavitt, Secretary of Health and Human Services of the United States, in his official

capacity, alleging race and disability discrimination, retaliation and a hostile work environment,

under 42 U.S.C. § 1981(a); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 7701 *et seq.*; and the Rehabilitation Act, 29

U.S.C. §§ 791 *et seq.* The defendant moves to dismiss the plaintiff's racial discrimination and

hostile work environment claims, contending that the plaintiff fails to state a cause of action.

Because the plaintiff adequately pleads her claims, the court denies the motion. The defendant

also requests that the court dismiss the plaintiff's hostile work environment claim under Title VII

and disability discrimination claim under the Rehabilitation Act because she raises these claims

---

[1] The defendant does protest the plaintiff's retaliation claim based on the alleged reassignment of job duties. Consequently, the court treats the defendant's motion as one for partial summary judgment.

for the first time in her opposition to the defendant's motion to dismiss.  But, because these new claims are substantially similar to the original claims and would cause no undue prejudice to the defendant, both claims survive the motion.  The plaintiff's filing for Civil Service Retirement System ("CSRS") benefits, however, precludes her Rehabilitation Act claim.

Alternatively, the defendant moves for summary judgment on the plaintiff's hostile work environment, race discrimination and retaliation claims.  Because the plaintiff rebuts the defendant's legitimate non-discriminatory reason for her removal, the court denies summary judgment on the plaintiff's claims of racial discrimination and retaliation based on removal.  Also, because the parties have not conducted discovery and the plaintiff presents genuine issues of material fact regarding the reassignment of her work and her hostile work environment claim, the court denies the defendant's motion for summary judgment on those claims.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff, an African-American female, worked as a Procurement Analyst and Deputy Director, service grade GS-1102-14, in the Office of Small and Disadvantaged Business Utilization ("Office of Small Business") at the Department of Health and Human Services ("Department of Health") beginning January 2000.  Compl. ¶ 7; Def.'s Mot. at 3.  The plaintiff alleges issues arose between her and Debbie Ridgely, the Director of the Office of Small Business, starting in 2003-2004.  Compl. ¶ 9.

The first incident the plaintiff identifies, however, occurred in October 2004 when Ridgely sent her an e-mail regarding her use of unscheduled leave and submission of leave requests.  Compl. ¶ 9; Def.'s Mot. at 3 & Ex. 4.  In response, the plaintiff complained about Ridgely's management style and respect for others and noted that she would seek temporary

placement in the Office of Women's Health.  Def.'s Mot., Ex. 5.  Ridgely countered by sending a memorandum to the plaintiff "about inappropriate behavior, standards of conduct, and performance concerns."  Def.'s Mot., Ex. 6.

Meanwhile, Ridgely hired Clarence Randall, a white male, for a job created, the plaintiff claims, to supersede her position.  Pl.'s Opp'n at 3.  The plaintiff contends that Ridgely subsequently transferred many of the plaintiff's responsibilities to Randall.  Pl.'s Opp'n, Exs. 1, 3, 5.  Additionally, the plaintiff claims Ridgely reassigned her duties to other individuals in the office, Pl.'s Opp'n at 3-5 & Ex. 5, but Ridgely only concedes that "a single task . . . was reassigned to another co-worker" while the plaintiff was on leave, Def.'s Mot. at 7 & Ex. 2. Ridgely maintains that the plaintiff was only temporarily overseeing two other alleged reassigned activities until they could be transferred back to a retiree's replacement.  *Id.*  Ridgely insists that all other original duties and responsibilities remained in the plaintiff's care.  *Id.*  Furthermore, Ridgely points out that she – as director – had assigned many of the programs the plaintiff suggested to other staff from their inception.  Def.'s Reply, Ex. 1.

The plaintiff also claims that Ridgely treated her differently than her colleagues.  Compl. ¶ 3-4.  The plaintiff notes that Ridgely had an open-door policy for Randall, yet not for her, and required Randall's presence at all of the plaintiff's meetings.  Pl.'s Opp'n, Ex. 1.  More generally, the plaintiff alleges that Ridgely, among other things, relied solely on e-mail contact; did not provide her with work to do seventy-five to eighty percent of the day; isolated her from the Small Business Association ("SBA") procurement center representative; changed the locks on her office; and manipulated her performance evaluations.  Pl.'s Opp'n at 5-7 & Exs. 1, 3, 5. Ridgely denies these and all other assertions, arguing that the plaintiff chose to contact her via e-mail; did not inform her of the lack of work; and could have contacted and worked with the SBA

procurement office.  Def.'s Reply, Ex. 1.  Further, Ridgely maintains that she never changed the locks and did not delay the performance reviews (the reviews were delayed by contract negotiations with the Union).  *Id.*

In response to her perceived mistreatment, the plaintiff filed multiple Equal Employment Opportunity ("EEO") complaints.  Compl. ¶ 12.  From January 2005 to July 2006, the plaintiff submitted two formal complaints and attempted to file a third.  Def.'s Mot., Exs. 7-9; Pl.'s Opp'n, Ex. 9.  Her first complaint alleged sex, color and race discrimination, reprisal for her use of leave and a hostile work environment, while her subsequent complaint alleged retaliation in the form of threatening and hostile e-mails.  Def.'s Mot., Exs. 7, 10.  An administrative judge ordered an investigation in August 2006, yet the record reflects no official report or final decision.  Def.'s Mot., Ex. 15.

In June 2006, the plaintiff's psychologist, Dr. Frances Holland, sent a letter to Ridgely recommending that the plaintiff, who had already missed a number of days at work, take extended leave to deal with major depression and anxiety disorder.  Pl.'s Opp'n at 9; Compl. ¶ 13; Def.'s Mot., Ex. 27.  In the letter, Holland indicated that the plaintiff had been under her care "for several years" and that "extended stressful conditions, particularly in the work situation" generated the recent episodes.  Def.'s Mot., Ex. 27.  One month later, Holland wrote another letter, recommending an extension of sick leave despite some improvement in the plaintiff's psychological well-being.  Pl.'s Opp'n, Ex. 11.

In an October 2006 letter, Rachel Chance, Human Resources Specialist, informed the plaintiff that "her . . . absence [was] placing a considerable strain on the staff and their daily operations" and that "[she] was required to report to her office on November 13, 2006."  Def.'s Mot., Ex. 35.  Holland, however, recommended another extension, stating that despite slow

improvement, significant problems remained and "even the simplest demands regarding [the plaintiff's] work situation appear to cause . . . distress." Pl.'s Opp'n, Ex. 12. The plaintiff continued on leave, and in May 2007, Holland informed the agency that "it may be possible for [the plaintiff] to return to a position . . . in a part time capacity in 6-8 months." Def.'s Mot. at 9 & Exs. 29, 40.

While on leave in November 2006, the plaintiff filed worker's compensation claims, claiming that hostile treatment at the office exacerbated the depression she suffered while working for the IRS from 1994 to 1998. *Id.*, Ex. 37. The Department of Labor ("DOL") denied the claims, holding that the evidence did not support them. *Id.*, Ex. 44.

In January 2007, Ridgely proposed the plaintiff's removal due to her inability to perform her job and the need for a full-time employee. Compl. ¶ 14; Def.'s Mot., Ex. 41. The plaintiff challenged the recommendation, but Linda Garvin, Principal Deputy Assistant Secretary for Administration and Management, upheld it in June 2007, effective July 1, 2007. Def.'s Mot., Exs. 42-43. Garvin considered the plaintiff's refusal to allow review of her medical records; her absolute inability to work; and the agency's inability to accommodate the plaintiff at some other full-time position, "now or in the foreseeable future." *Id.*

The plaintiff filed an appeal of this decision with the Merit Systems Protection Board ("MSPB"), yet the MSPB has yet to issue a final decision. Compl. ¶ 2. Ultimately, the plaintiff filed an application for disability retirement under the CSRS that the Office of Personnel Management ("OPM") granted. Def.'s Mot., Ex. 46.

In November 2007, the plaintiff filed her complaint alleging discrimination and retaliation based on race. Compl. ¶¶ 16-19. The defendant filed a motion to dismiss, or in the alternative, for summary judgment in February 2008. *See generally* Def.'s Mot. In her

opposition to the defendant's motion, the plaintiff for the first time raised claims of a hostile

work environment and discrimination under the Rehabilitation Act to which the defendant has

replied. *See generally* Pl.'s Opp'n; Def.'s Reply. The court now turns to the pending motions.


### III. ANALYSIS

**A. The Court Grants in Part and Denies in Part the Defendant's Motion to Dismiss[2]**

**1. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which

it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing

Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice

pleading is made possible by the liberal opportunity for discovery and the other pre-trial

procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of

his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14

---

[2]    The defendant argues that the court lacks subject matter jurisdiction, claiming the plaintiff
"provides no factual basis for the assertion of jurisdiction" pursuant to the CSRA. Def.'s Mot. at
1 n.1. But, the court has subject matter jurisdiction over the CSRA claim under 28 U.S.C. §
1331, which grants original jurisdiction to district courts over "all civil actions arising under the .
. . laws . . . of the United States."

The defendant also argues that the plaintiff failed to exhaust her remedies for her hostile work
environment claim and "is bound by the parameters of her administrative complaint." Def.'s
Reply at 6. The plaintiff, however, included a hostile work environment claim in her EEO
complaint filed in March 2005. Def.'s Mot., Ex. 8. Accordingly, the defendant has not met his
burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust her
administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

(2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211

F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl.*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from

*Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it

appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief");

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008)

(affirming that "a complaint needs *some* information about the circumstances giving rise to the

claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to

relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964,

1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable

inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67

(D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir.

2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the

court need not accept as true inferences unsupported by facts set out in the complaint or legal

conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C.

Cir. 2004); *Browning*, 292 F.3d at 242.

   **2. The Court Denies the Defendant's Motion to Dismiss the Racial Discrimination Claim**

The defendant contends that the plaintiff failed "to plead enough facts to state a claim for

which relief is possible on its face." Def.'s Mot. at 12. Specifically, the defendant argues that

"simply pleading 'discrimination'" does not satisfy the pleading requirement. *Id.* at 13. In

response, the plaintiff asserts that she is only required to allege "that she suffered damages at the hand of her employer based on her membership in a protected class." Pl.'s Opp'n at 12.

The plaintiff's complaint alleges discrimination based on race, manifested in the "reassigning to others her meaningful job responsibilities . . . causing her to suffer . . . depression and . . . [an] anxiety disorder, and . . . terminating her employment." Compl. ¶ 1. Specifically, the plaintiff points to being isolated and subjected to public ridicule and disparate treatment. *Id.* ¶ 10. In addition, she alleges that the agency's discrimination caused her to suffer from depression and anxiety. *Id.* ¶ 13. These factual assertions supplement the plain and short statement that the agency discriminated against her on account of her race by providing "circumstances, occurrences, and events." *Twombly*, 127 S. Ct. at 1965 n.3 (quoting 5 FED. PRAC. & PROC. § 1202 at 94); *see also Sparrow v. United Air Lines, Inc.* 216 F.3d 1111, 1115 (D.C. Cir. 2000) (requiring that a plaintiff only allege that she "was turned down for a job because of [her] race") (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). Accordingly, these facts satisfy the notice pleading requirement, and the court denies the defendant's motion to dismiss for failure to state a claim.

### 3. The Court Denies the Defendant's Motion to Dismiss the Hostile Work Environment Claim

#### a. The Plaintiff's Claim is Raised in the Complaint and is Substantially Similar to her Original Claims

The defendant argues that the court should dismiss the plaintiff's hostile work environment claim because "there is no count in the complaint alleging [it]." Def.'s Reply at 6. In the present case, the plaintiff plainly states that Ridgely "created a hostile work environment," although she did not include a separate hostile work environment count. Compl. ¶¶ 1, 9. Even when a "claim is not set forth . . . in a separate count," courts have addressed the validity of that

claim as if the plaintiff listed the count. *Ficken v. Golden*, 2005 WL 692019, at *6 (D.D.C. Mar. 24, 2005) (adjudging the validity of a defamation claim even though the plaintiff did not list it as a separate count). Furthermore, the plaintiff provides factual support for this claim throughout her complaint, pointing to Ridgely's hostile and hurtful treatment of her from 2004 until her departure. Compl. ¶¶ 10-13. Such factual statements are sufficient to allege a claim so long as they provide notice of that claim. *Freeman v. Fallin*, 254 F. Supp. 2d 52, 59 n.4 (D.D.C. 2003) (holding that the plaintiff's complaint was valid because, despite general allegations, it provided notice). Because the plaintiff expressly identified a hostile work environment claim in her complaint and provides some factual support for that claim, the defendant's argument is factually baseless.

In the alternative, even if the plaintiff did not allege such a claim in her complaint, courts should not dismiss claims raised for the first time in an opposition if they are "substantially similar" to the original claims and would not cause "undue prejudice" to the defendant. *Wiley v. Glassman*, 511 F.3d 151, 159 (D.C. Cir. 2007) (noting that "when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that . . . [it] will not prejudice the other party" (quoting 5 FED. PRAC. & PROC. § 1219 at 281-83)).

Under the substantially similar prong, a newly introduced claim survives a motion to dismiss if "the factual basis" of the original claims supports the new claim. *Id.*; *accord Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1208 (D.C. Cir. 1993) (allowing new claims in the "absence of any need to allege new facts"). In support of her discrimination and retaliation claims, the plaintiff alleges that Ridgely treated her with "extreme hostility" and "subject[ed] her to public ridicule" beginning between 2003 and 2004. *Id.* ¶ 10. Also, following her EEO

complaints, the plaintiff avers that Ridgely's treatment "became even more hostile and hurtful." *Id.* ¶ 12. These factual allegations equally support the plaintiff's hostile work environment claim. Because the factual basis for these claims is substantially similar to the factual basis for her hostile work environment claim, the plaintiff satisfies the first prong of the test.

The defendant can still prevail on a motion to dismiss a claim made for the first time in the plaintiff's opposition if he can show that the inclusion of that claim causes undue prejudice. *Wiley*, 511 F.3d at 159 (disagreeing with a district court's decision to strike one of the plaintiff's claims raised for the first time in the opposition to a motion for summary judgment because the defendant did not demonstrate how allowing the plaintiff's claim would cause undue prejudice); *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 11 n.10 (D.D.C. 2008) (permitting a new claim because "the defendant d[id] not show how allowing the claim would cause undue prejudice"). Here, the defendant does not allege, much less demonstrate, undue prejudice.[3] Moreover, the defendant addresses many of the factual bases for the hostile work environment claim in his motion to dismiss, belying any potential claim of undue prejudice for lack of notice. Def.'s Mot. at 22-27. Therefore, both prongs of the *Wiley* test are met and the court denies the defendant's motion to dismiss the hostile work environment claim.

**b. The Plaintiff Adequately States a Cause of Action for Hostile Work Environment**

Further, the defendant argues that even if the court allows the hostile work environment claim, the court should dismiss it for not presenting "facts that would *establish* elements of each

---

[3]     Failing to provide notice or requiring a party to expend significantly more time, money or effort than reasonably expected may constitute undue prejudice. *See, e.g., Marcoux v. Shell Oil Product Co. LLC*, 524 F.3d 33, 43 n.9 (1st Cir. 2008) (determining that "defendants suffer undue prejudice as a result of delay or lack of notice"); *Chainey v. Street*, 523 F.3d 200, 210 n.5 (3d Cir. 2008) (holding that a defendant "avoid[s] . . . [causing] undue prejudice by providing the plaintiff with notice and the opportunity" to challenge an affirmative defense) (internal citation omitted); *Dzonkowski v. Dzonkowski*, 2008 WL 2163916, at *7 (S.D. Ala. May 16, 2008) (holding that causing delay and increasing costs causes undue prejudice).

claim." Def.'s Reply at 7 (emphasis added). But, notice pleading does not require such a heightened standard. *See Conley*, 355 U.S. at 47. Instead, the plaintiff must plead facts which *support* her claim. *See Twombly*, 127 S. Ct. at 1969; *Fame Jeans*, 525 F.3d at 16 n.4.

A hostile work environment claim is "based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). The plaintiff alleges that Ridgely created a hostile work environment starting in 2003 and that the hostility manifested itself through isolation, subjection to public ridicule and harmful treatment that was so severe it caused psychological illness. Compl. ¶¶ 10, 12-13. In addition, following her first formal EEO complaint in March 2005, the plaintiff alleges that Ridgely's treatment toward her became "more hostile and hurtful." *Id.* ¶ 12. The plaintiff has alleged some conduct in support of her claim, specifically Ridgely's actions toward her and overall negative treatment in the workplace, and thus, the facts in the plaintiff's complaint support her hostile work environment claim. *Powell v. Castaneda*, 390 F. Supp. 2d 1, 11 (D.D.C. 2005); *see also Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187-88 (D.D.C. 2007) (holding that, under the totality of the circumstances, the facts provided sufficient support to defeat a motion to dismiss despite being broad allegations). Therefore, the court denies the defendant's motion to dismiss.

### 4. The Court Grants the Defendant's Motion to Dismiss the Plaintiff's Rehabilitation Act Claim

#### a. The Plaintiff's Claim is Substantially Similar to Claims Raised in the Complaint, and the Defendant has not Demonstrated Undue Prejudice

The defendant also argues that the court should dismiss the plaintiff's Rehabilitation Act claim because she raised it for the first time in her opposition. Def.'s Reply at 15. Specifically, the defendant states that the plaintiff failed to "mention reasonable accommodation, violation of the Rehabilitation Act, disability discrimination or jurisdiction under the Rehabilitation Act

11

anywhere in the . . . complaint." *Id.* Again, the new claim is allowed provided it is "substantially similar" to the claims asserted in her complaint and allowing them would cause no "undue prejudice" to the defendant. *Wiley*, 511 F.3d at 159.

First, for the claims to be substantially similar, the factual basis of the new claim must parallel the factual basis of the original claims. *Id.* The plaintiff states in support of her discrimination and retaliation claims that she had "become medically disabled from performing her job duties," yet she also states that a transfer to another supervisor or other accommodations could have allayed her inability to work. Compl. ¶¶ 12, 14, 15. The plaintiff further maintains that the agency did not make any accommodations. *Id.* Because the facts that support her racial discrimination and retaliation claims under Title VII also provide factual support for her claim under the Rehabilitation Act, they meet the "substantially similar" prong as articulated in *Wiley*.

Second, the defendant has the opportunity to demonstrate how allowing the claim would cause undue prejudice. *Wiley*, 511 F.3d at 159. While the defendant claims that it is "beyond belief" that the plaintiff raises her Rehabilitation Act claim for the first time in her opposition, this does not indicate how the defendant would face undue prejudice if the court allowed the claim. Def.'s Reply at 15. Indeed, the defendant fails to argue how allowing the claim would significantly affect his time, money or effort. And, because of the infancy of this case, it is difficult to see how the introduction of a substantially similar claim would be unduly prejudicial. *See Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 15 (D.D.C. 2008) (noting that "it would be difficult [to raise any undue prejudice argument] at [the dismissal] stage of the proceedings"). On these grounds, the court denies the defendant's motion to dismiss the Rehabilitation Act claim.

### b. Recovery Under the CSRS Precludes the Plaintiff's Rehabilitation Act Claim

In the alternative, the defendant argues that filing and receiving disability retirement under the CSRS precludes the plaintiff's Rehabilitation Act claim. Def.'s Reply at 15-16; 5 U.S.C. § 8337(a); 5 C.F.R. §§ 831.1202 *et seq.* The defendant contends that the plaintiff cannot obtain Rehabilitation Act relief after "claiming total disability in order to receive disability payments." Def.'s Reply at 16.

The CSRS provides the following standard to determine whether an individual is disabled:

> An employee shall be considered to be disabled only if the employee is found by the [OPM] to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment . . . to a vacant position . . . in which the employee would be able to render useful and efficient service.

5 U.S.C. § 8337(a). The OPM promulgated regulations enumerating five specific conditions that "must be met for an individual to be eligible for disability retirement." 5 C.F.R. § 831.1203(a)(1)-(5). One of these conditions requires that "[t]he employing agency must be *unable to accommodate* the disabling medical condition in the position held or in an existing vacant position." *Id.* § 831.1203(a)(4) (emphasis added).

Under the Rehabilitation Act, however, an individual may allege disability discrimination if he is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Stated differently, an employee can only sue under the Rehabilitation Act "if he or she can perform the essential functions of the position *with reasonable accommodation*." *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (emphasis added) (citing *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994)).

Because the enforcement standards of the Rehabilitation Act are the same as in the Americans with Disabilities Act ("ADA"), case law analyzing disability benefits under the ADA applies with equal force to the Rehabilitation Act. *See* 29 U.S.C. § 791(g) (stating that the "standards used to determine whether [the Rehabilitation Act] has been violated . . . shall be the standards applied under the [ADA]"); *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc) (holding that the *McDonnell Douglas* framework applies equally to ADA and Rehabilitation Act cases). In *Cleveland v. Policy Management Systems Corp.*, the Supreme Court addressed whether an individual's application for benefits under the Social Security Act ("SSA") precludes an ADA claim. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 800 (1999). Under the SSA, an individual is disabled if he cannot "engage in any substantial gainful activity" regardless of potential accommodations, while, under the ADA, the same individual is a "qualified individual with a disability" if he can "perform the essential functions" of his job "with . . . reasonable accommodation." *Id.* at 801, 803; 42 U.S.C. § 12111(8); 42 U.S.C. § 423(d). The Court reasoned that, while both statutes aid individuals with disabilities, significant differences exist between them, which allow the two claims to "comfortably exist side by side." *Cleveland*, 526 U.S. at 802-03. The Court noted, however, that, in some cases, SSA claims may conflict with ADA claims, especially if the plaintiff makes a "sworn assertion" in applying for disability benefits that he is unable to work even with accommodations. *Id.* at 806. Since that caveat did not apply, the Court concluded that receiving SSA benefits does not preclude a plaintiff's Rehabilitation Act claim.[4]

---

[4]    In an earlier decision, the D.C. Circuit took the same position, holding that plaintiffs can claim SSA benefits and sue their employers under the ADA. *Swanks v. WMATA*, 116 F.3d 582, 586 (D.C. Cir. 1997) (recognizing that individuals should not have to choose between seeking ADA relief, "forego[ing] their entitlement to Social Security benefits," and recovering benefits, "sacrific[ing] an opportunity for reinstatement while simultaneously shielding their employers from liability for allegedly unlawful discrimination").

Unlike the SSA, which allows disability payments regardless of whether an accommodation is possible, the CSRS prohibits disability payments if an individual can work with an accommodation.  *Compare* 42 U.S.C. § 423(d) (defining disability under the SSA as the "inability to engage in any substantial gainful activity") *with* 5 C.F.R. § 831.1203(a)(4) (requiring a showing that the agency cannot accommodate the otherwise disabled individual). Thus, the CSRS and the ADA do not "comfortably exist side by side."  In analyzing whether receiving disability benefits precludes relief under the Rehabilitation Act, the Second and Eighth Circuits have come to different conclusions.  In *Faconti v. Potter*, the Second Circuit favorably notes the district court's determination that claims under the CSRS and the Rehabilitation Act cannot functionally co-exist because of their inherent inconsistency.  *Faconti v. Potter*, 2007 WL 2781896, at *1 (2d Cir. Sept. 25, 2007) (precluding a Rehabilitation Act claim after obtaining CSRS benefits because "the requirements for obtaining a [CSRS] disability retirement annuity are wholly inconsistent with the requirements for proving a claim of disability discrimination under the Rehabilitation Act" (quoting *Faconti v. Potter*, No. 01-cv-1034, slip op. at 17 (E.D.N.Y. July 25, 2002))); *see also Wallace v. Soc. Sec. Admin.*, 108 F. Supp. 2d 716, 719 (S.D. Tex. 2000) (recognizing that a claim of disability retirement under the CSRS precludes a Rehabilitation Act claim because plaintiffs applying for disability retirement under the CSRS must be unable to work even with an accommodation).

But, in *Arneson v. Heckler*, the Eight Circuit reversed the district court's holding that "by accepting retirement, the . . . employee voluntarily surrendered all claims."  *Arneson v. Heckler*, 879 F.2d 393, 396 (8th Cir. 1989) (quoting *Brown v. United States*, 2 Cl. Ct. 586, 587 (1983), *aff'd without opinion*, 732 F.2d 167 (Fed. Cir. 1984)).  Without addressing the preclusion issue, the Eighth Circuit determined that if an employer illegally discriminates against an employee,

retirement under the CSRS cannot be deemed voluntary. *Id.* As such, the court held that "[i]f [the] termination was [the product of illegal discrimination], then [the individual] has the right to seek [Rehabilitation Act relief] regardless of his retirement." *Id.* In other words, since the plaintiff retired based on alleged discrimination, the retirement could not be considered voluntary, and the plaintiff should have the opportunity to bring a Rehabilitation Act claim.

This court agrees with the Second Circuit's reasoning because the voluntariness of the retirement is secondary to the preclusive effect of obtaining disability benefits under the CSRS. Comparing the SSA and the ADA in *Cleveland*, the Supreme Court does not consider the voluntariness of retirement; instead the Court analyzes whether the SSA and the ADA are orthogonal avenues of relief. *Cleveland*, 526 U.S. at 802-05. Likewise, the Second Circuit notes the inconsistency of obtaining disability relief under the CSRS (necessitating a declaration that the employee is unable to work with accommodations) with filing a Rehabilitation Act suit (requiring the employee to allege that he or she is able work with accommodations).[5] *Compare* 5 U.S.C. § 831.1203(a)(4) *with* 42 U.S.C. § 12111(8). In this case, the plaintiff proffered to the OPM that she should receive disability benefits because she could not work, even with an accommodation. Def.'s Mot., Ex. 45. The OPM then granted her benefits because no "medical evidence . . . shows that accommodation is . . . possible due to the severity of the medical condition and the physical requirements of the position." *Id.* In bringing a Rehabilitation Act claim, however, the plaintiff must allege that she could work with reasonable accommodations. *See Breen*, 282 F.3d at 841. This inconsistency evokes the caveat foretold in *Cleveland*: if an individual indicates he cannot work in order to obtain benefits, he may preclude his access to ADA relief. *See Cleveland*, 526 U.S. at 806. In light of the plaintiff's assertion to the OPM that

---

[5]     The plaintiff could obtain other CSRS benefits without applying for disability relief, so CSRS relief does not necessarily preclude recovery under the Rehabilitation Act. 5 U.S.C. § 8333.

she could not work, even with an accommodation, the plaintiff cannot now argue she can work with an accommodation.  *See* Def.'s Mot., Ex. 45; Compl. ¶¶ 14-15.  Obtaining CSRS disability benefits, therefore, precludes the plaintiff from bringing a Rehabilitation Act claim.

### B.  The Record is Insufficient to Allow the Court to Grant the Defendant's Motion for Partial Summary Judgment

### 1.  Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### 2. The Hostile Work Environment Claim

#### a. Legal Standard for Hostile Work Environment Claims

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Toward that end, an

employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id.* at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

### b. The Court Denies the Defendant's Motion for Summary Judgment on the Plaintiff's Hostile Work Environment Claim

The defendant contends that, even if all of the plaintiff's allegations are true regarding her hostile work environment claim, "the[y] are not severe and pervasive and . . . there is no link to Plaintiff's race or retaliation." Def.'s Reply at 10. The defendant argues that she only "experienced ordinary tribulations of the workplace." *Id.* The plaintiff retorts that "the incidents

. . . mentioned at the administrative level" in her March 2005 EEO complaint "form the basis of her hostile work environment claim."  Pl.'s Opp'n at 15.  They are "[her] allegations concerning her December 2004 performance appraisal, alleged delay in processing a waiver regarding a salary overpayment, leave usage in October and November 2004, alleged management delays in responding to requests in 2004 and 2005, and management undermining [her] ability to perform [her] job responsibilities."  *Id.*  The plaintiff contends that the hostile work environment continued when Ridgely sent her hostile and threatening e-mails in response to her EEO complaint.  *Id.* at 5.  Additional incidents include changing the locks on her door; preventing her access to her e-mail and voicemail; manipulating her performance appraisal; providing unrealistic goals; ignoring or refusing various requests; and being subject to micro-management. *Id.* at 6 & Ex. 1.

Neither party provides the court with the e-mails in question; thus, the court is unable to assess the nature of the e-mails the plaintiff received following the recording of her EEO complaint.  It is possible that these e-mails contain racial slurs and epithets that would reach the requisite level of severity or that they occurred with such frequency that the harassment was pervasive.  *See George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (stating that "isolated incidents" lack the pervasiveness required to "form the basis for a Title VII violation"); *Bowen v. Mo. Dep't of Soc. Servs.*, 311 F.3d 878, 885 (8th Cir. 2002) (holding that the use of racial slurs and menacing remarks constitute severe conduct); *Baloch v. Norton*, 355 F. Supp. 2d 246, 260 (D.D.C. 2005) (noting the absence of discriminatory slurs in denying the plaintiff's hostile work

environment claim).[6]  Furthermore, because the plaintiff took leave for her depression and

anxiety, it is clear that the plaintiff subjectively suffered emotional injuries.  *Harris*, 510 U.S. at

21-22 (requiring that the plaintiff "subjectively perceive the environment to be abusive" to

establish a hostile work environment claim).  Without knowledge of the content of the e-mails

the plaintiff received from Ridgely, however, it is impossible to know whether "a reasonable

person would find [this environment] hostile or abusive."  *Id.* at 21.  Therefore, the court denies

the defendant's motion for summary judgment on the plaintiff's hostile work environment claim.

### 3.  The Court Denies the Defendant's Motion for Summary Judgment on the Plaintiff's Claim of Retaliation Based on Removal

#### a.  Legal Standard for Retaliation

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas*

framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003)

(applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash.*

*Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell*

*Douglas* framework to a Rehabilitation Act retaliation claim).  The Supreme Court explained the

framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence
> a prima facie case of [retaliation].  Second, if the plaintiff succeeds in proving the
> prima facie case, the burden shifts to the defendant "to articulate some legitimate,
> [non-retaliatory] reason for the employee's rejection" . . . .  Third, should the
> defendant carry this burden, the plaintiff must then have an opportunity to prove
> by a preponderance of the evidence that the legitimate reasons offered by the

---

[6]    In addition, the plaintiff alleges that Ridgely publicly humiliated her by "ridicul[ing] her in front of her colleagues" for not having done any work, Pl.'s Opp'n at 6, while Ridgely argues that the plaintiff "embarrassed herself by stating that she had no work to report," Def.'s Mot., Ex. 38. "[W]hether [conduct] is . . . humiliating" is one of the criteria a court should consider in adjudging the severity of the environment.  *Harris*, 510 U.S. at 23.  Alone, however, this incident is not severe or pervasive enough to amount to a hostile work environment.  *See George*, 407 F.3d at 417 (stating that an isolated incident is not sufficient to raise a hostile work environment claim). Yet, if the e-mails demonstrate that the defendant created a hostile work environment, this incident may lend credence toward her claim.

> defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber*, 494 F.3d at 186 (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The court must consider whether the

jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Aka*, 156 F.3d at 1291.

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-discriminatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection). The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a 20-month period suggests "no causality at all").

### b. The Plaintiff Rebuts the Defendant's Legitimate
### Non-Discriminatory Reason for Removal

Relying on the information provided by the plaintiff's doctor, the defendant believed that

the plaintiff "was medically unable to perform her duties." Def.'s Mot. at 31. Being unable to

perform one's duties is a legitimate non-retaliatory reason for removal. *See Thompson v.*

*Henderson*, 2007 WL 930271, at *11 (6th Cir. Mar. 28, 2007) (determining that being unable to

perform the essential functions of [the] job, with or without accommodation," is a legitimate

non-discriminatory reason); *Kinsey v. City of Jacksonville*, 2006 WL 1827747, at *3-4 (11th Cir.

July 3, 2006) (stating that being "unable to perform the duties of [one's] job due to [a] medical

condition" is a legitimate non-retaliatory reason); *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58,

59, 61 (7th Cir. 1990). Thus, the court turns to the plaintiff's rebuttal arguments.

The plaintiff makes three arguments in her attempt to rebut the defendant's legitimate

non-retaliatory reason for her removal. First, she argues that she could have performed her job

responsibilities after "completion of her treatment plan by her psychotherapist, along with a

transfer away from Ridgely's harassment." Pl.'s Opp'n at 22. She notes her doctor's statement

from the May 2007 letter that "it may be possible for [the plaintiff] to return to a position within

DHHS in a part time capacity in 6-8 months," but "she may not be able to to [sic] return to the

office in which she is currently employed." Def.'s Mot., Ex. 40. Given the doctor's prognosis,

the plaintiff potentially could have returned to work 13-14 months after she first went on leave,

but the doctor offered no guarantee that she would return in that time. Furthermore, the letters

from the doctor demonstrate that the plaintiff's progress did not ensure a speedy recovery. Over

the course of a year, the plaintiff's doctor noted that she showed "intermittent mild

improvement," *id.*, Ex. 34, and slow improvement, *id.*, Ex. 36, yet she also suffered relapses and

"even the simplest demands regarding her work situation cause[d] such distress that [the

plaintiff] [was] unable to cognitively process the demands," *id.*, Exs. 36, 40. "Coming to work regularly" is an essential function of performing one's duties. *Carr*, 23 F.3d at 529. As such, indefinite leave is "something an employer is not required to grant." *Sampson v. Citibank, F.S.B.*, 53 F. Supp. 2d 13, 18 (D.D.C. 1999), *aff'd without opinion*, 221 F.3d 196 (D.C. Cir. 2000); *see also Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) (holding that an employer need not "wait indefinitely for . . . medical conditions to be corrected"); *Bramwell v. Blakely*, 2006 WL 1442655, at *7 (D.D.C. May 24, 2006) (stating that "[a]n employer is not required to provide an indefinite leave of absence"). Therefore, the plaintiff's request for an accommodation that would allow her to "complete her treatment plan" on an indefinite schedule is not acceptable.

Alternatively, the plaintiff's assertion that she could work with her requested accommodations conflicts with her representation to the OPM that she could not work even with reasonable accommodations. *Compare* Pl.'s Opp'n at 22 *with* Def.'s Mot., Exs. 45-46. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Galt v. Phoenix Indem. Co.*, 120 F.2d 723, 726 (D.C. Cir. 1941). Prior agency determinations, such as the one made by the OPM in this case, are analogous to the "legal proceeding" described in *Galt*. *See, e.g.*, *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996) (holding that a worker's compensation proceeding is a "legal proceeding"); *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71-74 (2d Cir. 1997) (holding that a Social Security disability determination is a "legal proceeding"). Because the plaintiff argued to the OPM that she was unable to work even with accommodations, she is estopped from now arguing the contrary position.

Second, the plaintiff argues that the agency's claim that it "needs someone in [the plaintiff's] position who can be available for duty on a regular, full-time basis" is false. Pl.'s Opp'n at 26. She contends that because she had nothing to do at work, there should be no issue in leaving her position open until she recovers and, thus, the defendant's claim is "disingenuous." *Id.* While it may be the case that the plaintiff had nothing to do, it is up to the agency to determine whether they want to fill the plaintiff's position with a full-time employee. If that means hiring someone to do essentially nothing, as she claims, then that is the agency's prerogative. Courts avoid the "judicial micromanagement of business practices." *Barnette v. Chertoff*, 453 F.3d 513, 519 (D.C. Cir. 2006) (internal citation omitted) (refusing to question the agency's decision to reclassify a position); *see also Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997). "To [do] otherwise would be to render the judiciary a super-personnel department that reexamines an entity's business decisions – a role [the courts] have repeatedly disclaimed." *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007) (quotation marks omitted) (quoting *Holcomb*, 433 F.3d at 897) (refusing to challenge the agency's standards for determining which applicant is more qualified). Therefore, this argument also fails to rebut the defendant's legitimate non-retaliatory reason.

Finally, the plaintiff attempts to rebut the defendant's non-retaliatory reason by arguing that it is insufficient on its face because the defendant caused her inability to work through the agency's discriminatory practices. Compl. ¶ 13. The result of the plaintiff's hostile work environment is instructive on this point: if "the complained of conduct in this case does not rise to the level" of a hostile work environment, the plaintiff's argument fails to adequately rebut the defendant's non-discriminatory reason. *Peda v. Am. Home Prods. Corp.*, 214 F. Supp. 2d 1007, 1020 (N.D. Iowa 2002) (holding that the plaintiff's argument that the defendant "caused

26

Plaintiff's inability to return to work" cannot "hold water" because the so-called causation was insufficient to "rise to the level of actionable harassment"). Because the plaintiff could still succeed on her hostile work environment claim, the court assumes, *arguendo*, that the plaintiff rebuts the defendant's legitimate non-retaliatory reason.

### c.  Considering the Prima Facie Case as Part of the Totality of the Evidence

Because "the strength of the prima facie case is still relevant . . . to the central inquiry of whether [the plaintiff] has demonstrated that a reasonable jury could conclude from all the evidence" that the plaintiff's removal was retaliatory, the court turns to the elements of the prima facie case. *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 216 (D.D.C. 2008). But, because of *Brady*, "the Court will not decide whether [the plaintiff] has actually made out a prima facie case of retaliation." *Id.* First, the plaintiff contends that she engaged in protected activity based on two letters: one in November 2006 to Chance, and copied to Secretary Michael Leavitt, and another in June 2007 to James Hubbard, the EEO investigator. Pl.'s Opp'n at 19. "The statutory prohibition against discrimination is very broad, protecting an employee who 'participate[s] in *any* manner' in a Title VII proceeding." *Barnes v. Small*, 840 F.2d 972, 976 (D.C. Cir. 1988) (quoting 42 U.S.C. § 2000e-3(a)). To that end, letters can constitute protected activity. *See Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 31 (D.C. Cir. 1997) (letter claiming discrimination based on age is a protected activity); *Singletary*, 351 F.3d at 524 (holding that letters sent to deciding official regarding the status of an administrative proceeding constitute a protected activity). To qualify, however, the letters must allege harassment or be "an effort to affect future proceedings." *Barnes*, 840 F.2d at 976.

The November 2006 letter is a cover letter to the plaintiff's submission of her worker's compensation claims. Def.'s Mot., Ex. 37. In it, the plaintiff's husband[7] describes the abusive environment his wife suffered, arguing that it caused her disability. *Id.* He then adds:

> As an aside, Mr. David Short, EEO Director, called me once over the summer concerning [the plaintiff's] EEO complaints filed over a year ago. He said he was calling to keep the lines of communication open. To date neither she or I have heard anything from Mr. Short nor anyone from the HHS EEO office. Will HHS continue to delay the investigation of my wife's complaints? Are the lines no longer open?

Def.'s Mot., Ex. 37. Because the plaintiff not only identified the harassment in the letter, but also attempted to impact the future treatment of her claim, the November 2006 letter constitutes a protected activity. *See Barnes*, 840 F.2d at 976 (holding that letters must indicate harassment or attempt to "affect future proceedings").

The June 2007 letter is also a cover letter, but it only lists documents the plaintiff is submitting to Hubbard for his investigation of her EEO complaint. Pl.'s Opp'n, Ex. 16. Specifically, the letter states, "Enclosed, please find copies of documents from [the plaintiff] that relate to her EEO investigation" and then lists the enclosed documents. *Id.* The letter does not mention discrimination or harassment. Therefore, the June 2007 letter is not a protected activity. *See Paquin*, 119 F. 3d at 31; *see also Fox v. Eagle Distrib. Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007) (requiring specific references to alleged acts of discrimination).

Moving to whether the agency's action following the November 2006 letter was materially adverse, the defendant claims that proposed removals do not qualify as materially adverse actions. Def.'s Reply at 21. Proposed removals, however, are exactly the kind of acts

---

[7]     The plaintiff executed a power attorney on July 26, 2006, indicating that her husband would represent her in connection with her employment claims. Def.'s Mot., Ex. 32. It is settled in this Circuit that an attorney's actions on behalf of his or her client may qualify as protected activities under Title VII. *Singletary*, 351 F.3d at 525 (holding that an attorney's letters constitute protected conduct under Title VII).

which the statute covers. *See Powell*, 390 F. Supp. 2d at 9 (holding that a "proposed termination" is "the very type of discrete act[] . . . identified . . . as separate, actionable, unlawful employment practices"); *Willingham v. Gonzales*, 391 F. Supp. 2d 52, 59 (D.D.C. 2005) (considering a proposed removal and subsequent removal adverse employment actions). Therefore, the plaintiff suffered from a materially adverse action.

Finally, the plaintiff argues that a causal connection between the November 2006 letter and her proposed removal exists and, therefore, suggests that the defendant's legitimate non-retaliatory reason is pretext. Pl.'s Opp'n at 18. "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, *and* that the adverse personnel action took place shortly after the activity." *Mitchell*, 759 F.2d at 86 (emphasis added). Turning first to the knowledge component, the plaintiff points out that she sent the letter to Leavitt, Ridgely's supervisor. However, "[t]he bald fact that someone in a supervisory capacity . . . knew of the [protected activity] is insufficient to lead to a reasonable conclusion that others would know." *Hazward v. Runyon*, 14 F. Supp. 2d 120, 124 n.9 (D.D.C. 1998); *see also Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001) (imputing knowledge only "if the [plaintiff] can demonstrate that [the knowledgeable person] had influence or leverage over the official decisionmaker"). The plaintiff offers no evidence that Leavitt informed Ridgely of this further contact, but Ridgely responded to the worker's compensation claims that were enclosed with the letter. Def.'s Mot., Ex. 38. Accordingly, a reasonable jury could infer that Ridgely had knowledge of the letter.

Addressing the temporal proximity, the plaintiff sent the November 2006 letter two months before Ridgely proposed the plaintiff's termination. Def.'s Reply at 21. This district has varied as to whether two months is sufficient to establish a causal connection. *See Edwards v.*

*Envtl. Prot. Agency*, 456 F. Supp. 2d 72, 92 (D.D.C. 2006) (concluding that a two-month gap is not sufficient to establish temporal proximity); *Baker v. Potter*, 294 F. Supp. 2d 33, 41 (D.D.C. 2003) (same); *but see Sewell v. Chao*, 532 F. Supp. 2d 126, 139 (D.D.C. 2008) (holding that a two month period "might be enough . . . to prove the causation prong"); *Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (stating a two month span "is sufficiently temporal in proximity to give rise to an inference of discrimination"). Given the totality of the circumstances in this case, the court concludes that the plaintiff has established a causal connection.

In sum, the plaintiff rebuts the defendant's legitimate non-discriminatory reason by presenting evidence that the defendant actually caused her injury through the effects of a hostile work environment. Additionally, the plaintiff's evidence surrounding the November 2006 letter is sufficient for a reasonable jury to infer retaliation. Therefore, the court denies the defendant's motion for summary judgment on the plaintiff's retaliation claim.

### 4. The Court Denies the Defendant's Motion for Summary Judgment on the Plaintiff's Discrimination Claims

#### a. Legal Standard for Race Discrimination

Generally, to prevail on a claim of discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram*, 336 F.3d at 1088. The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Burdine*, 450 U.S. at 252-53 (internal citations omitted) (quoting *McDonnell Douglas*, 411 U.S. at 802).

To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id*. at 254. To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its action. *Id*. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id*. Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.*, 509 U.S. 502.

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow"). The district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated

against the employee on the basis of race, color, religion, sex, or national origin?"  *Brady*, 520

F.3d at 494.  The court must consider whether the jury could infer discrimination from (1) the

plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's

proffered explanation, and (3) any further evidence of discrimination that may be available to the

plaintiff.  *Waterhouse*, 298 F.3d at 992-93 (quoting *Aka*, 156 F.3d at 1289).  The plaintiff need

not present evidence in each of these categories in order to avoid summary judgment.  *Aka*, 156

F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's

explanation in light of the totality of the circumstances of the case.  *Id.* at 1291.

### b.  The Plaintiff's Removal

The defendant offers the same non-discriminatory justification as he did for the

retaliation claim: that the plaintiff had a "medical inability to perform her duties."  Def.'s Mot. at

31.  The plaintiff counters with the same challenges to the defendant's proffered reason and

adequately rebuts it.  Pl.'s Opp'n at 22, 26 (indicating that she could have worked with

accommodations and that the agency would suffer no undue hardship because her position

required no work) and Compl. ¶ 13 (alleging that Ridgely caused the plaintiff's disability).

Specifically, the plaintiff's claim that the defendant's discriminatory practices caused her

illnesses, and as with the plaintiff's hostile work environment claim, the court concludes that it is

too early to resolve the merits of the plaintiff's discrimination claim based on her removal.  *Cf.*

*Cones*, 199 F.3d at 521 (holding that the plaintiff's argument rebutting the defendant's legitimate

non-discriminatory reason on the plaintiff's discrimination claim also rebutted the defendant's

reason on the plaintiff's retaliation claim because they were the same).

### c.  The Reassignment of the Plaintiff's Work

Turning to the plaintiff's discrimination claim based on reassignment of work, Ridgely

asserts that she reassigned the plaintiff's duties because they had to be completed while the plaintiff was on leave in the fall of 2004.  Def.'s Mot. at 26.  Specifically, the defendant states:

> A single task, the report for the Small Business Regulatory Enforcement Fairness Act) [sic] was reassigned to another co-worker in October 2004, while [the Plaintiff] was out on FMLA.  [The Plaintiff's] duties which covered the 8(a), Small Disadvantaged Business, Subcontracting, the new Electronic Subcontract Reporting System and the Small Business Manual remained the same and were never reassigned.

*Id.*, Ex. 2 (alterations in original).  The plaintiff, however, does not argue that the agency reassigned her duties while she was out on leave in 2004.  Instead, she contends that the agency continued to reassign her work after she returned from leave.  Pl.'s Opp'n, Ex. 1.  Because the defendant does not address this claim, he fails to articulate a legitimate non-discriminatory reason for the adverse action.

In the event that the defendant fails to "assert *any* legitimate, nondiscriminatory reason for the decision . . . establishing a prima face [sic] case is 'not onerous.'"  *Brady*, 520 F.3d at 494 n.2 (quoting *Burdine*, 450 U.S. at 253).  The Circuit explained that the prongs of the prima facie case for a discrimination claim involving an adverse action not consisting of a firing, demotion, or refusal to hire or promote "have been articulated as: (i) the employee belongs to a protected class; (ii) the employee was still qualified for the position; [and] (iii) despite still being qualified, the employee was . . . adversely acted upon."  *Id.* at 493.  In the present case, the plaintiff easily meets the first two elements.  First, the plaintiff is an African-American.  Compl. ¶ 1.  Second, the defendant has not alleged, let alone introduced, any evidence that the plaintiff could not perform her responsibilities after returning from leave in the fall of 2004.  In fact, in her 2004 performance appraisal, the plaintiff "received the highest rating available, 'Fully Successful.'"  Def.'s Mot. at 22 & Ex. 17.

Moving to the third prong of the prima facie case, the reassignment of work

responsibilities can rise to the level of an adverse employment action when it results in "significantly different responsibilities." *Brown*, 199 F.3d at 456 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Carpenter v. Federal Nat'l Mortgage Ass'n*, 949 F. Supp. 26, 28 n.3 (D.D.C. 1996). Courts are hesitant to intervene in business affairs so as to avoid judicial micromanagement, especially when a diminution in pay, benefits, or work hours does not accompany the reassignment. *Mungin*, 116 F.3d at 1556-57; *accord Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002) (holding that removal of job responsibility did not constitute an adverse employment action "because there was no change in [the plaintiff]'s job position, grade, pay or benefits"). Traditionally, "short of finding that the employer's stated reason was indeed a pretext[,] . . . the court must respect the employer's unfettered discretion . . . [in] decid[ing] which of several qualified employees will work on a particular assignment." *Mungin*, 116 F.3d at 1556. But, changes in work responsibilities that fully strip employees of their substantive responsibilities can rise to the level of an adverse employment action even without a diminution in pay, benefits or work hours. *See Dahm v. Flynn*, 60 F.3d 253, 257 (7th Cir. 1994) (stating that if the employer strips an employee of "all of her duties . . . [it] would be adverse for all but those completely devoid of ambition or the need to be challenged"); *Baloch*, 355 F. Supp. 2d at 257 (noting that an adverse action exists if "the plaintiff, after years of substantive work, suddenly f[inds] himself stripped of all duties and atrophying in bureaucratic oblivion").

Here, the plaintiff makes no allegation that there was a diminution in her pay, benefits or work hours. But, she asserts that Ridgely "relegated [her] to low level clerical duties at best" and

left her with "nothing to do 75-80% of the time."[8]  Pl.'s Opp'n, Ex. 1.  The plaintiff also

contends that "Ridgely practically assigned all of [her] responsibilities to [] Randall," including

procurement duties, despite being told that Randall "handled budget and personnel and [she]

handled procurement."  *Id.*  Additionally, the plaintiff states that Ridgely removed various

programs from the plaintiff's control, including the identification of work for small businesses,

coordination of a specific conference, formulation of a strategic plan, and responsibility for the

Veteran Business Program and Small Business Climate Assessment.  Pl.'s Opp'n, Ex. 5.  The

plaintiff admits certain programs were her responsibility, but argues that this was "in name

only."  *Id.*

      The defendant flatly contradicts the plaintiff's allegations, asserting that the plaintiff

retained all of her significant job responsibilities.  Def.'s Mot. at 26.  The defendant corroborates

this position through an e-mail and two affidavits from employees.  Def.'s Reply, Exs. 3, 5, 6 (all

noting that the plaintiff retained her job responsibilities).  Although the defendant concedes that

two programs, the Woman's Business Program and the Veteran Business Program, were the

plaintiff's responsibility while the agency searched for a replacement for a retiree, Def.'s Mot.,

Ex. 2, the defendant claims that the plaintiff knew from the outset that her responsibility for these

programs was temporary, Def.'s Reply, Ex. 1.  Furthermore, Ridgely and Randall both deny, in

an affidavit and in an e-mail response to the EEO investigation respectively, that the defendant

---

[8]     As an aside, the plaintiff avers that "[i]t is settled law that whether a diminution in duties constitute [sic] an adverse employment action is a jury question, and is not to be decided on summary judgment."  Pl.'s Opp'n at 15 (citing *Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007)).  The plaintiff incorrectly interprets *Czekalski*.  In *Czekalski*, the Circuit held that summary judgment was inappropriate because "a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities," simply a reiteration of the standard courts employ in deciding motions for summary judgment.  *Id.* at 365; *accord Anderson*, 477 U.S. at 249 (stating that summary judgment is inappropriate if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party").  Therefore, it is not "settled law" that such an issue is always a jury question.

reassigned the plaintiff's procurement responsibilities to Randall. *Id.*; Def.'s Reply, Ex. 5. In any event, the defendant maintains that Ridgely, as the manager of the office, had the authority to dictate which employees worked on specific projects and that she was unaware of the plaintiff's lack of work. *Id.* Based on the affidavits alone, if the plaintiff is correct, then she suffered an adverse action. But, if the defendant is correct, no adverse action occurred.

In addition to her affidavits, though, the plaintiff relies on an e-mail from a fellow employee, Curtis Bryant, which states that "some [of the plaintiff's] tasks were supported by member's [sic] of the Director's immediate staff." Pl.'s Opp'n, Ex. 2. She errs in her reliance, however, because Bryant qualifies his statement by stating that the "support" was "[d]uring [the plaintiff's] absence" and that "[t]o [his] knowledge, [the plaintiff] retained the ability and latitude to interact with the staff members." Pl.'s Opp'n, Ex. 2. Accordingly, the plaintiff, relying on her own self-serving affidavit, offers no direct evidence of the reassignment of her work. *See generally* Pl.'s Opp'n & Exs. 1, 4. This Circuit has held that "*under some circumstances* . . . a party relying on unsupported affidavits cannot survive summary judgment." *McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101, 1109 (D.C. Cir. 2001) (emphasis added), *vacated in part on other grounds*, 320 F.3d 280 (D.C. Cir. 2003); *see also Arrington*, 473 F.3d at 343 (holding that "[w]hen a plaintiff relies entirely on his own self-serving testimony, which lacks any corroboration and is contradicted by all the available . . . evidence, a court is not obligated to reward the plaintiff with a jury trial"). Because the plaintiff offers no corroboration for her affidavit, summary judgment would normally be appropriate. *See McKesson HBOC, Inc.*, 271 F.3d at 1109.

The court determines that this case does not warrant summary judgment even though the plaintiff only relies on a self-serving affidavit. Consistently, the Supreme Court has held that

Federal Rule of Civil Procedure 56(c) requires "adequate time for discovery" before granting summary judgment. *Celotex*, 477 U.S. at 322; *see also Anderson*, 477 U.S. at 250 n.5 (stating that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"). The presentation of a potential genuine issue of material fact weighed against the lack of corroborating evidence indicates the need for discovery prior to the resolution of a motion for summary judgment. *See Celotex*, 477 U.S. at 322; *see also Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1998) (holding that the court is in no "position to decide    . . . whether there is a genuine dispute . . . because the district court did not permit . . . any discovery before issuing its ruling"). Despite the fact that the plaintiff relies on her own self-serving affidavit to present genuine issues of material fact, the totality of the evidence suggests that the plaintiff may establish her case with discovery. *But cf. Raymond v. U.S. Capitol Police Bd.*, 157 F. Supp. 2d 50, 55 (D.D.C. 2001) (granting summary judgment prior to discovery only because "[e]ven if given the opportunity to conduct discovery, the plaintiff would not be able to establish a prima-facie case"). Accordingly, while summary judgment may be appropriate at a later date, there is sufficient disagreement and ambiguity to proceed with discovery. The court, therefore, denies the defendant's partial motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss the plaintiff's discrimination claim and hostile work environment claim. However, because her application for CSRS benefits precludes it, the court dismisses the plaintiff's Rehabilitation Act claim. In addition, the court denies the defendant's motion for summary judgment on the

plaintiff's hostile work environment claim and retaliation and discrimination claims.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th

day of August, 2008.


RICARDO M. URBINA
United States District Judge