# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARTHURETTA HOLMES-MARTIN, :
 :
  Plaintiff, : Civil Action No.: 07-2128
 :
  v. : Re Document No.: 33
 :
KATHLEEN SEBELIUS, :
in her official capacity as Secretary :
of the U.S. Department of Health :
and Human Services, :
 :
  Defendant. :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter is before the court on the defendant's renewed motion for summary judgment.[1]  The plaintiff, the former Deputy Director of the Office of Small and Disadvantaged Business Utilization ("OSDBU"), commenced this action against her former employer, alleging that she was subjected to racially-motivated disparate treatment, retaliation and a hostile work environment, in violation of 42 U.S.C. § 1981 ("§ 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*[2]  The defendant contends that it is entitled to summary judgment on all of the plaintiff's claims because the actions she complains of are

---

[1] Although the defendant styles its motion a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment," the substance of the motion is devoted to the defendant's arguments for summary judgment rather than dismissal.  Indeed, the plaintiff titles her response an "Opposition to Defendant's Renewed Motion for Summary Judgment," a characterization not disputed in the defendant's reply.  Accordingly, the court construes the defendant's motion as one solely for summary judgment.

[2] The plaintiff also asserted a claim of disability discrimination, which the court dismissed in a prior memorandum opinion.  *See* Mem. Op. (Aug. 7, 2008) at 11-17.

justified by legitimate, non-discriminatory and non-retaliatory reasons, because many of those actions do not qualify as adverse employment actions and because she was not subjected to severe or pervasive hostile conduct based on her race or her involvement in protected activity.

For the reasons discussed below, the court concludes that the plaintiff has raised an issue of material fact concerning whether the reassignment of her Deputy Director duties was motivated by discriminatory intent, and denies the defendant's motion for summary judgment on the disparate treatment claim premised on this conduct. The plaintiff, however, has failed to demonstrate the existence of a genuine issue of material fact with respect to any of her remaining claims, including her disparate treatment claims based on the reassignment of her project duties and her termination, her retaliation claims and her hostile work environment claim. Accordingly, the court grants summary judgment to the defendant on these claims.

## II. FACTUAL & PROCEDURAL BACKGROUND

A more detailed presentation of the factual allegations underlying this case can be found in a prior decision of this court. *See generally* Mem. Op. (Aug. 7, 2008). By way of brief background, in January 2000, the plaintiff, an African-American woman, began working as the Deputy Director of the OSDBU, an office within the Department of Health and Human Services. Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. ("Pl.'s Opp'n") at 3. Her first line supervisor was Debbie Ridgely, a white female, the Director of the OSDBU. *Id.*

In 2004, Ridgely hired Clarence Randall, a white male, to serve as her "Special Advisor," a position created, the plaintiff claims, to supersede the plaintiff's position. *Id.* at 3. The plaintiff alleges that over the following months, Ridgely transferred many of the plaintiff's responsibilities to Randall, such that Randall effectively assumed the role of Ridgely's deputy.

*Id.* Meanwhile, the plaintiff was relegated to working as a staffer on specific OSDBU projects and no longer held the broad supervisory authority she had exercised as the Deputy Director. *Id.* at 3-4 & Ex. 2 ("Pl.'s Decl.") ¶ 3.

The plaintiff asserts that not long after relegating her to project work, Ridgely began transferring the plaintiff's project responsibilities to other employees. *Id.* at 6. As a result of these reassignments, the plaintiff allegedly had nothing to do seventy-five to eighty percent of the work day. Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot.") at 7; Pl.'s Decl. ¶ 15.

The plaintiff also contends that during this period, Ridgely subjected her to a pattern of hostile behavior. Pl.'s Opp'n at 10. For instance, the plaintiff states that Ridgely humiliated her in front of the staff by insinuating that she was incompetent and irresponsible and scrutinized her more closely than other employees. *Id.* Ridgely also purportedly undermined the plaintiff by telling other employees not to listen to her or respect her opinion, and directed the plaintiff to communicate with her exclusively by e-mail. *Id.* at 10-11. Furthermore, the plaintiff alleges that Ridgely mishandled a salary waiver request submitted by the plaintiff, imposed unrealistic deadlines on the plaintiff and included unwarranted criticisms in the plaintiff's 2004 performance evaluation. *Id.* at 12.

The plaintiff alleges that this mistreatment resulted in a rapid deterioration of her psychological and physical health, leading to severe depression and generalized anxiety disorder. *Id.* at 12-13. In June 2006, the plaintiff's physician recommended that the plaintiff, who had already missed a number of days of work, take extended leave to address her health issues, which she did. *Id.* at 13; Compl. ¶ 13. In an October 2006 letter, a Human Resources Specialist informed the plaintiff that "her . . . absence [was] placing a considerable strain on the staff and their daily operations" and that "[she] was required to [return to] her office on November 13,

2006." Def.'s Mot. to Dismiss or, in the Alternative, for Partial Summ. J. ("Def.'s 1st Mot."), Ex. 35. The plaintiff's physician, however, recommended extending the leave for an undefined period, informing the agency that "it may be possible for [the plaintiff] to return to a position . . . in a part time capacity in 6-8 months." Def.'s 1st Mot. at 9 & Exs. 29, 40.

In January 2007, Ridgely proposed the plaintiff's removal, citing the plaintiff's inability to perform her job. Pl.'s Opp'n at 13; Compl. ¶ 14. In the notification of proposed removal, Ridgely informed the plaintiff that her decision was "based on the fact that the Agency needs someone in your position of record who can carry out the duties and responsibilities of the position on a full-time, regular basis." Def.'s Mot., Ex. 21 at 3. The defendant terminated the plaintiff from employment in June 2007. Compl. ¶ 15.

After exhausting her administrative remedies, the plaintiff filed a complaint in this court in November 2007 alleging racial discrimination and retaliation. *See* Compl. ¶¶ 1, 16-19. The defendant filed a motion to dismiss, or, in the alternative, for summary judgment in February 2008. *See generally* Def.'s 1st Mot. In her opposition to that motion, the plaintiff for the first time raised claims of a hostile work environment and disability discrimination under the Rehabilitation Act. *See generally* Pl.'s Opp'n to Def.'s Mot. to Dismiss. In August 2008, the court dismissed the plaintiff's Rehabilitation Act claim but denied the remainder of the defendant's motion. *See generally* Mem. Op. (Aug. 8, 2007).

Following discovery, the defendant filed this renewed motion for summary judgment in July 2009. *See generally* Def.'s Mot. With the motion now fully submitted, the court turns to an analysis of the applicable legal standards and the parties' arguments.

# III.  ANALYSIS

## A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir.

1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose

of the summary judgment device, which is to weed out those cases insufficiently meritorious to

warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish

proof of discrimination, the court should view summary judgment motions in such cases with

special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997),

overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v.*

*Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B. The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment on the Plaintiff's Disparate Treatment and Retaliation Claims

### 1. Legal Standard for Race Discrimination

Generally, to prevail on a claim of discrimination under Title VII,[3] a plaintiff must follow

a three-part burden-shifting analysis known as the McDonnell Douglas framework. *Lathram v.*

*Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as

follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a
> prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima
> facie case, the burden shifts to the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant
> carry this burden, the plaintiff must then have an opportunity to prove by a
> preponderance of the evidence that the legitimate reasons offered by the defendant were
> not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of
> persuading the trier of fact that the defendant intentionally discriminated against the
> plaintiff remains at all times with the plaintiff.

---

[3] "The standards and order of proof in section 1981 cases have been held to be identical to those
governing Title VII disparate treatment cases." *Berger v. Iron Workers Reinforced Rodmen
Local 201*, 843 F.2d 1395, 1413 n. 7 (D.C. Cir. 1988) (citing *Carter v. Duncan-Huggins, Ltd.*,
727 F.2d 1225 (D.C. Cir. 1984)).

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id*. at 254. To rebut this presumption, the employer must articulate a legitimate, nondiscriminatory reason for its action. *Id*. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id*. Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (quoting *Burdine*, 450 U.S. at 254-55).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). The district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory

reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Id*. at 1291.

## 2. Legal Standard for Retaliation

The *McDonnell Douglas* burden-shifting framework also governs claims of unlawful retaliation. *Taylor v. Solis*, 571 F.3d 1313, 1320 n.* (D.C. Cir. 2009) (observing that "[r]etaliation claims based upon circumstantial evidence are governed by the three-step test of *McDonnell Douglas Corp. v. Green*"); *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse,[1] and (3) there existed a causal connection between the protected

---

[1] In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

activity and the materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  The plaintiff's burden is not great: he "need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

As in the context of disparate treatment claims, if the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case."  *Hicks*, 509 U.S. at 507 (internal citation omitted); *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow").  Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?"  *Brady*, 520 F.3d at 494.  In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason."  *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual."  *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case.  *Aka*, 156 F.3d at 1291.

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-

retaliatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection). The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all").

### 3. The Plaintiffs' Disparate Treatment and Retaliation Claims

In this case, the plaintiff asserts that the defendant discriminated against her on the basis of her race and retaliated against her for her involvement in protected EEO activity by transferring her Deputy Director duties to Randall, reassigning many of her project assignments and terminating her employment. *See generally* Compl.; Pl.'s Opp'n. The court addresses each of these claims in turn.

### a. Transfer of the Plaintiff's Deputy Director Duties to Randall

In response to the plaintiff's allegations concerning the transfer of her Deputy Director responsibilities to Randall, the defendant asserts that Randall and the plaintiff "handled distinct

aspects of office duties."[4] *Id.* at 17; Def.'s Reply at 9. The defendant contends that as Ridgely's Special Advisor, Randall's sphere of authority encompassed "Human Resource matters, budget matters and consolidation/realignment details," duties not shared by the plaintiff, who retained authority over acquisition and procurement matters. Def.'s Mot. at 17; Def.'s Reply at 5-10. According to the defendant, Ridgely divided the responsibilities between Randall and the plaintiff in this manner for the legitimate, non-discriminatory purpose of improving the efficiency of OSDBU operations. *See* Def.'s Reply at 9.

The plaintiff maintains that the defendant's legitimate, non-discriminatory justification is undermined by the fact that Ridgely transferred core Deputy Director responsibilities to Randall. Pl.'s Opp'n at 3-6. For instance, the plaintiff asserts that Ridgely designated Randall to act as Director in her absence, brought Randall, rather than the plaintiff, with her to high level meetings and took Randall's advice on all matters relating to OSDBU operations, including procurement matters. *Id.* at 4-5. The plaintiff also alleges that after hiring Randall, Ridgely prohibited the plaintiff from serving as a liaison to other federal agencies and insisted that Randall attend all meetings with the plaintiff. *Id.* at 4. The plaintiff contends that in so doing, Ridgely effectively demoted her from Deputy Director to an office staffer assigned to specific projects. *Id.*

Because the defendant has asserted a legitimate, non-discriminatory justification for the challenged action, the court forgoes an examination of the prima facie case and turns directly to the central matter in dispute: whether the plaintiff has produced sufficient evidence for a reasonable jury to conclude that the defendant's asserted non-discriminatory and non-retaliatory reason for the purported transfer of her duties to Randall was pretext for discrimination or retaliation. *See Jones*, 557 F.3d at 678; *Brady*, 520 F.3d at 494.

---

[4]    The defendant does not argue that Randall's alleged usurpation of the role of Deputy Director did not constitute an adverse employment action. *See generally* Def.'s Mot.; Def.'s Reply.

As set forth in the "Position Description," the OSDBU Deputy Director "function[ed] as the Office's expert and senior procurement analyst for the Department's preferential procurement programs" and "serve[d] as the liaison and maintain[ed] working relationships with the Small Business Administration . . . and other Federal agencies to coordinate and assist in the development of policies in acquisition and resolve issues arising from the preferential procurement programs."  Pl.'s Opp'n, Ex. 1 at 1.  The Deputy Director's "Major Duties and Responsibilities" included the following: "[p]articipat[ing] with the Director and higher officials in the development and evaluation of the Department-wide preferential procurement programs plans;" planning, coordinating and conducting "staff studies and special projects;" "serv[ing] as a project leader for special studies and program evaluations requiring contacts with other elements of the Department;" "[p]articipat[ing] as a department representative in study groups with . . . other Federal agencies to evaluate government-wide programs;" "[s]erv[ing] as departmental key contact for the small business community;" "[c]onducting program reviews and evaluations at all Departmental Operating Divisions;" "[r]epresent[ing] the Department in Federal, State, and locally sponsored conferences, seminars, and forums on small business programs matter;" and, in the Director's absence, assuming the delegated duties and responsibilities of that position.  *Id*. at 1-3.

Although the defendant maintains that Randall did not assume the role of Deputy Director, the plaintiff has presented evidence suggesting that Ridgely did, in fact, transfer core Deputy Director responsibilities to Randall.  In her declaration, the plaintiff asserts that Ridgely "constantly assigned Randall small business program procurement duties and sometimes assigned him to do the same procurement task that she assigned to me without informing me."  Pl.'s Decl. ¶ 5.  The plaintiff further states that "[i]t was Randall who acted as Director when

[Ridgely] was unavailable, and Randall who accompanied her to high level meetings." *Id.* ¶ 4. The plaintiff also alleges that after hiring Randall, Ridgely prohibited her from serving as a liaison to other federal agencies, participating in the development and evaluation of Department-wide procurement program plan and conducting program reviews and evaluations of other divisions. *Id.* ¶ 3. As indicated in the Position Description, many of these duties were central to the Deputy Director position. *See generally* Pl.'s Opp'n, Ex. 1.

The allegations in the plaintiff's declaration are, to some extent, corroborated by Joseph Bowe, a Procurement Analyst who came under Ridgely's supervision early in 2005. *See* Pl.'s Opp'n, Ex. 3 ¶ 2. Bowe, who interacted with Ridgely, Randall and the plaintiff "between one and three times daily," states that Randall

> essentially functioned as the Deputy Director although [the plaintiff] was assigned to that position. For example, at meetings, Ms. Ridgely would often look directly to Mr. Randall, indicating that he was a decision-maker, on issues that ordinarily would have been a decision for the Deputy Director. As time went on, [the plaintiff] had fewer and fewer responsibilities, and it was clear she did not carry the authority of a Deputy Director . . . . For example, I observed that Ms. Ridgely did not turn to [the plaintiff] for advice on procurement or other matters. In addition, [the plaintiff] was not appointed to act on behalf of the Director in her absence. I observed that [the plaintiff] did not assist with assigning duties in the office, nor did I observe that she was responsible for evaluating other employees' quality of work.

*Id.* ¶ 4.

The plaintiff has also submitted a declaration from Barbara Hall, a Small Business Specialist hired by Ridgely. *See* Pl.'s Opp'n, Ex. 28 ¶ 2. Hall states in her declaration that she "never observed [the plaintiff] assisting with the assignment of duties or evaluation of other employees' performance," "never observed [the plaintiff] acting on behalf of the Director in her absence by performing duties such as signing leave slips," and "never observed [the plaintiff]

meeting with any high-level officials." *Id.* ¶ 3. According to Hall, "[t]hese responsibilities were mostly covered by Clarence Randall." *Id.*

Although the defendant points out that the plaintiff does not provide any documentation, such as e-mails or meeting notes, to support the allegation that her leadership role was usurped, Def.'s Reply at 6, the court notes that the defendant's assertions regarding the scope of Randall's authority are based exclusively on the statements of Ridgely and Randall, *see id.* at 5-10; Def.'s Mot. at 16-17. The defendant has not presented the court with any position description, vacancy announcement, e-mails or meeting notes delineating the functions and responsibilities of the "Special Advisor" role that Randall filled. *See generally* Def.'s Mot.; Def.'s Reply. The court can hardly fault the plaintiff for failing to provide documentary support on this point in the absence of any equivalent evidence proffered by the defendant. Nor is such documentary evidence strictly necessary, given the allegations in the plaintiff's declaration and the corroborating testimony offered in the declarations of Bowe and Hall. *See Arrington*, 473 F.3d at 338 (holding that the direct testimonial evidence in the plaintiff's affidavit was sufficient to defeat summary judgment because "[o]n the record at hand, neither the District Court nor [the Circuit could] conclude that appellees' story is truth and appellant's story is a fabrication, at least not if all of the evidence is viewed in the light most favorable to appellant as required by Federal Rule of Civil Procedure 56(c)").

The defendant also argues that the court should discount the corroborating statements made by Bowe and Hall because these employees did not work in the same office as Ridgely, Randall and the plaintiff, and interacted with these individuals in person only once per month. *See* Def.'s Reply at 5-6. Yet the mere fact that these individuals were not physically present in the same office hardly means that they lack personal knowledge about the duties and

responsibilities discharged by Randall and the plaintiff. Indeed, the defendant does not dispute that Bowe interacted with Ridgely, Randall and the plaintiff one to three times per day by telephone and e-mail, and the record is silent as to the frequency of Hall's telephone and e-mail interactions with these individuals. *See generally* Def.'s Reply. Moreover, although these witnesses' limited interaction with Randall and the plaintiff might affect the weight that the trier of fact affords their testimony, the court must decline the defendant's invitation to weigh the evidence at this stage of the litigation. *See Anderson*, 477 U.S. at 249 (noting that "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

The defendant notes that during her deposition, the plaintiff was unable to recall specific details regarding the meetings that Randall allegedly attended in her place. *See* Def.'s Mot. at 16; Def.'s Reply at 6. The court, however, does not consider the plaintiff's inability to recall the "exact meetings," "exact dates" or "titles of meetings," *see* Def.'s Mot. at 16; Def.'s Reply at 6, as grounds for disregarding her testimony regarding her exclusion from meetings. *Cf. Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that, in ruling on a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence"). Furthermore, although the defendant asserts that the plaintiff could not identify any specific instance in which Ridgely denied a request by the plaintiff to attend a meeting, *see* Def.'s Reply at 6 (citing Def.'s Mot., Ex. 7 at 33), the plaintiff testified that she did ask Ridgely why, as a general matter, she was not being asked to attend such meetings, Def.'s Mot., Ex. 7 at 33. And although the defendant points out that the plaintiff readily admitted that she did attend certain meetings, such as weekly staff meetings, after Randall was hired, Def.'s Reply at 7, it is

far from clear that these were the type of "high level meetings" that are the focus of the plaintiff's allegation, *see* Pl.'s Decl. ¶ 4.

Finally, the defendant asserts that even if the plaintiff has cast doubt on the defendant's asserted justification for the challenged action, she has presented insufficient evidence from which a reasonable trier of fact could infer a discriminatory or retaliatory motive for the transfer of duties to Randall. *See* Def.'s Mot. at 17, 19. Indeed, to show pretext, the plaintiff must demonstrate "*both* that the reason was false, *and* that discrimination [or retaliation] was the real reason." *Weber*, 494 F.3d at 186 (quoting *Hicks*, 509 U.S. at 515); *see also Houston v. Sektek, Inc.*, 2010 WL 322251, at *5 (D.D.C. Jan. 28, 2010) (concluding that even if the defendant's asserted justification for reassigning an African-American employee's job responsibilities to another employee was pretext, the defendant was entitled to summary judgment because the plaintiff offered insufficient evidence from which to infer that the true motivation for the plaintiff's actions was racial discrimination). The court first considers the plaintiff's discrimination claim.

The Supreme Court has stated that

> [p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'

*Reeves*, 530 U.S. at 147 (citing *Hicks*, 509 U.S. at 517; *Wright v. West*, 505 U.S. 277, 296 (1992)) (internal citation omitted); *Hicks*, 509 U.S. at 511 (observing that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to

show intentional discrimination" such that "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination"). Accordingly, the evidence offered by the plaintiff to rebut the defendant's legitimate, non-discriminatory justification constitutes circumstantial evidence from which a trier of fact could reasonably infer discrimination.

The plaintiff has also offered some evidence that Ridgely held discriminatory views. For instance, the plaintiff testified during her deposition that Ridgely treated African-American employees differently than white employees when it came work assignments, stating that "[w]hen it came to black employees, [Ridgely] would reassign the work. When it came to white employees, she would give them options, whether they wanted to do it or not." Def.'s Mot., Ex. 7 at 30. Bowe states in his declaration that Ridgely "caused minority employees to retire or [leave] early because she would not allow them to succeed in their jobs." Pl.'s Opp'n, Ex. 3 ¶ 6. Hall states that although Ridgely did not include her in staff meetings and other projects, upon Hall's retirement, Ridgely replaced her with a white man, whom she included in staff meetings and other projects. Pl.'s Opp'n, Ex. 28 ¶ 7.

Although the court does not consider this independent evidence of racial animus particularly persuasive,[5] the court's role at this stage is not to weigh the evidence but simply to determine whether there exists a genuine issue of material fact. *See Anderson*, 477 U.S. at 250. The court is therefore constrained to conclude that based on the evidence rebutting the defendant's asserted non-discriminatory justification, the plaintiff's prima facie case and the independent evidence of a discriminatory motive, a reasonable jury could infer that Ridgely

---

[5] For instance, during her deposition, the plaintiff identified only one example of Ridgely's purportedly discriminatory treatment of employees, an instance in which Ridgely granted a white male employee's request not to work on an assignment. Def.'s Mot., Ex. 7 at 30. Likewise, Bowe identifies few specific instances in which Ridgely did not allow minority employees to "succeed in their jobs." *See generally* Pl.'s Opp'n, Ex. 3.

transferred the plaintiff's Deputy Director duties to Randall out of a discriminatory motive.  *See*

*Waterhouse*, 298 F.3d at 992-93.  Accordingly, the court denies the defendant's motion for

summary judgment on this claim.

The plaintiff's retaliation claim presents a different matter entirely.  From January 2005

to July 2006, the plaintiff submitted two formal administrative complaints and attempted to file a

third.  Mem. Op. (Aug. 7, 2008) at 4.  In addition, as this court noted in its prior decision, the

letter sent to the defendant in November 2006 regarding the plaintiff's administrative action

constituted protected activity.  *Id*. at 28.  The plaintiff, however, fails to draw a link between any

of these instances of protected activity and the transfer of her duties to Randall.  *See generally*

Pl.'s Opp'n.  The plaintiff has presented no direct evidence suggesting a connection between the

plaintiff's participation in protected activity and the transfer of her Deputy Director duties to

Randall.  *See generally* Pl.'s Opp'n.  Nor has the plaintiff provided any circumstantial evidence

of such a link, as she fails to specify when this purported transfer of duties took place.[6]  *See*

*generally id*.; Compl.  Under these circumstances, a reasonable fact-finder could not infer a

retaliatory motive based solely on the evidence rebutting the defendant's asserted justification for

the suspect action.  *See Reeves*, 530 U.S. at 147 (noting that such an inference may be reasonable

"[i]n appropriate circumstances").  Because the plaintiff has not presented sufficient evidence

from which a reasonable jury could infer that Ridgely transferred the plaintiff's Deputy Director

duties to Randall in retaliation for her participation in protected activity, the court grants the

plaintiff's motion for summary judgment on this claim.

---

[6]     It should be noted, however, that Ridgely hired Randall in 2004, *see* Pl.'s Opp'n at 3, before the
plaintiff's participation in protected activity began in January 2005, *see* Def.'s 1st Mot. at 4.

## 2. Reassignment of Project Work

The plaintiff also contends that after effectively demoting her to the role of an office staffer assigned to specific projects, Ridgely discriminated and retaliated against her by transferring her project assignments to other employees. *See* Pl.'s Opp'n at 6-8. The plaintiff identifies six projects that were allegedly assigned to her, but that Ridgely reassigned to other OSDBU staff: the Newsletter Project; the National Association of Professional Asian-Pacific American Women ("NAPAW") Conference; the Veteran's Business Program; the Small Business Form Project; the Small Business Climate Assessment Project; and the Strategic Planning Project.[7] Pl.'s Opp'n at 6-8; Pl.'s Decl. ¶ 6; Def.'s Mot. at 13-16.

The defendant argues that the reassignment of the plaintiff's project duties did not constitute an adverse employment action as necessary to support a claim of discrimination. *See* Def.'s Mot. at 8-12; Def.'s Reply at 2-4. In addition, the defendant contends that several of these duties were never "reassigned" and that any reassignments that did occur were supported by legitimate, non-discriminatory and non-retaliatory justifications. *See* Def.'s Mot. at 13-16. The court considers each project in turn.

### a. Newsletter Project

The defendant contends that responsibility for the Newsletter Project was never "taken away" from the plaintiff because it was never assigned to her in the first place. *See* Def.'s Mot. at 14; Def.'s Reply at 10-11. Rather, the defendant asserts that Ridgely placed Linda Purnell, an African-American woman, in charge of this project from the beginning. Def.'s Mot. at 14. The defendant points out that the plaintiff admitted during her deposition that Purnell headed the Newsletter Project and that this project was never assigned to her. Def.'s Mot., Ex. 7 at 61.

---

[7] The parties do not describe the substantive nature of these projects. *See generally* Def.'s Mot.; Pl.'s Opp'n; Def.'s Reply.

Indeed, the plaintiff does not dispute this fact in her opposition. *See generally* Pl.'s Opp'n. Because the plaintiff concedes that the Newsletter Project was never taken away from her, the plaintiff's allegations concerning this project offer no support to her claims regarding the reassignment of her project duties.

### b. NAPAW Conference

The defendant contends that responsibility for the NAPAW Conference was never taken away from the plaintiff. Def.'s Mot. at 15-16; Def.'s Reply at 13. As the defendant points out, the plaintiff testified during her deposition that Ridgely did not reassign this project. Def.'s Mot., Ex. 7 at 53. Rather, the defendant asserts that the plaintiff voluntarily removed herself from this project prior to its completion. Def.'s Mot. at 16.

The plaintiff responds that she never removed herself from the project, but that she successfully completed it "despite Ridgely's efforts to undermine her authority." Pl.'s Opp'n at 9-10. The plaintiff offers the declaration of Vivian Kim, an NAPAW official, who states that the plaintiff "saw the project through to completion." Pl.'s Opp'n, Ex. 5 ¶ 3. Yet this evidence does nothing to undermine the defendant's assertion that Ridgely never reassigned this project. Def.'s Mot., Ex. 7 at 53. Thus, because the plaintiff has offered no evidence to indicate that responsibility for the NAPAW Conference was taken away from her, the plaintiff's allegations concerning the reassignment of this project serve as no basis for her claims regarding the reassignment of her project duties.

### c. Veteran's Business Program

Although the defendant acknowledges that the Veteran's Business Program was assigned to the plaintiff, the defendant contends that this project was expressly assigned to the plaintiff on a temporary basis following the retirement of another employee, Angel Graves. *See* Def.'s Mot.

at 14; Def.'s Reply at 11. The defendant notes that in the e-mail assigning the plaintiff this task, Ridgely stated that she was "asking [the plaintiff] to step in on a temporary basis, until [Ridgely was] able to back-fill Angel's position." Def.'s Mot., Ex. 13. The defendant contends that once a replacement for Graves was hired in May 2006, the Veteran's Business Program was assigned to Debra Peters, an African-American woman. Def.'s Mot. at 15. Accordingly, the defendant argues, this project was never improperly removed from the plaintiff. *Id*.

The plaintiff notes that in response to an interrogatory concerning the reassignment of responsibility for this program, the defendant provided the aforementioned justification concerning Graves's retirement and also stated that "the reassignment was made to better balance the workload in the Immediate Office." Pl.'s Opp'n, Ex. 16 at 10. The plaintiff asserts that the latter justification is pretext because at the time the project was taken away from her, she had little to do. Pl.'s Opp'n at 20.

The plaintiff, however, does not dispute the defendant's assertion that the Veteran's Business Program was assigned to her only on a temporary basis until a replacement was hired to fill Graves's former position, nor does she address the defendant's contention that the project was reassigned because the vacancy was filled. *See generally* Pl.'s Opp'n. Thus, the plaintiff has failed to rebut the defendant's legitimate, non-discriminatory and non-retaliatory justification, namely, that this program was assigned to the plaintiff only on a temporary basis due to Graves's retirement and was removed not because of some discriminatory or retaliatory reason, but because a replacement for Graves had been hired. Accordingly, Ridgely's reassignment of this project provides no basis for her claims concerning the reassignment of her project responsibilities.

### d. Small Business Review Forms

The defendant acknowledges that Ridgely removed the plaintiff's responsibility for the Small Business Review Forms. *Id.* at 15. According to the defendant, the OSDBU had recently undergone a realignment that had brought in a significant number of new employees, which prompted the need to redistribute assignments among OSDBU staff. *Id.* Using her discretion as a supervisor, Ridgely decided to reassign responsibility for the Small Business Review Forms from the plaintiff to Peters. *Id.* The plaintiff responds that the Ridgely removed this responsibility before the realignment occurred. Pl.'s Opp'n at 20. Furthermore, the plaintiff asserts that this responsibility was taken away from her at a time when Peters was overwhelmed with work and the plaintiff had little do, undermining the defendant's assertion that Ridgely took this assignment away to "better balance [the] workload." *Id.* at 20-21.

To resolve this dispute, the trier of fact would be required to weigh the deposition testimony and affidavits on which both parties exclusively rely, a task the court may not undertake at this stage. *See Reeves*, 530 U.S. at 150. Accordingly, there remains an issue of fact as to whether the defendant's asserted justification was the real reason that the responsibility for the Small Business Review Forms was taken away from the plaintiff. *See Arrington*, 473 F.3d at 338.

This, however, does not end the inquiry, as the plaintiff must also offer sufficient evidence from which a reasonable fact-finder could conclude that discrimination or retaliation was the real reason for Ridgely's action. *See Weber*, 494 F.3d at 186. Turning first to the plaintiff's discrimination claim, the court notes that any inference of discriminatory motive is severely undermined by the fact that Ridgely transferred responsibility for the Small Business Review Forms to another African-American employee. *See Murray*, 406 F.3d at 715 (affirming

22

the dismissal of a race discrimination claim because even assuming the defendant's justifications were pretext, "a replacement within the same protected class cuts strongly against any inference of discrimination") (citing *Brown*, 199 F.3d at 451); *Peterson v. District of Columbia*, 2007 WL 1307889, at *3 (D.D.C. May 3, 2007) (holding that "[t]he argument that race motivated [the employer's] decision to transfer some of the plaintiff's duties to [another employee] is undercut by the fact that [that employee], like plaintiff, is African-American") (citing *Murray*, 406 F.3d at 715). Although a trier of fact can reasonably infer a discriminatory motive from the falsity of the asserted justification "in appropriate circumstances," *Reeves*, 530 U.S. at 147, the plaintiff has failed to offer sufficient evidence from which a reasonable jury could infer discriminatory intent in Ridgely's decision to transfer responsibility for the Small Business Review Forms to Peters.

As for the plaintiff's retaliation claim, the plaintiff has offered no evidence, direct or otherwise, linking the transfer of responsibility for the Small Business Review Forms to her involvement in any protected activity. *See generally* Pl.'s Opp'n; Compl. The plaintiff fails to identify what protected activity allegedly prompted Ridgely to take this duty away from her. *See generally* Pl.'s Opp'n; Compl. Under these circumstances, a reasonable jury could not infer, based solely on the evidence rebutting the defendant's asserted justification, that Ridgely removed this responsibility from the plaintiff in retaliation for her involvement in protected activity. Accordingly, the plaintiff's allegations concerning the Small Business Review Forms provide no support for her claims concerning the reassignment of her project responsibilities.

### e. Small Business Climate Assessment Project

The defendant contends that the Small Business Climate Assessment Project was never assigned to the plaintiff, asserting that Ridgely assigned Annette Owens-Scarboro, an African-American woman, to lead the project from its inception. *See* Def.'s Mot. at 13; *see also* Pl.'s

Opp'n, Ex. 23.  The defendant acknowledges that the plaintiff did play a role in securing the services of NatCom Marketing, an outside company retained to work on the Climate Assessment project.  *See* Def.'s Mot. at 13.  The defendant maintains, however, that once NatCom was retained to work on the project, the plaintiff's involvement came to an end and Owens-Scarboro served as the project leader.  *Id.*; Pl.'s Opp'n, Ex. 23.  Accordingly, the defendant argues, the Climate Assessment project was never assigned to (and thus never taken away from) the plaintiff.  Def.'s Mot. at 13.

The plaintiff attempts to undermine the defendant's explanation by pointing to e-mails that purportedly reflect the plaintiff's central involvement in the project.  *See* Pl.'s Opp'n at 21 & Exs. 20, 21, 22, 26.  Yet while these e-mails demonstrate the plaintiff's role in negotiating the services of NatCom, a matter not disputed by the defendant, they do not suggest that the plaintiff was ever given responsibility for the project itself.  *See* Pl.'s Opp'n, Exs. 20, 21, 22, 26.  Accordingly, the plaintiff has failed to rebut the defendant's asserted justification for the "reassignment" of the Climate Assessment Project.

Even if the plaintiff had rebutted the defendant's asserted justification, the plaintiff has offered no evidence from which a reasonable jury could conclude that discrimination or retaliation was the real reason for the removal of this project responsibility.  Again, the fact that Ridgely transferred this responsibility to an African-American woman strongly undermines any inference of racial animus.  *See Murray*, 406 F.3d at 715; *Peterson*, 2007 WL 1307889, at *3.  Furthermore, the plaintiff has offered no evidence linking the removal of this duty to her participation in any protected activity.  *See generally* Pl.'s Opp'n; Compl.  Accordingly, the plaintiff has offered insufficient evidence for a reasonable jury to conclude that the defendant's asserted justification was a pretext for discrimination or retaliation. Accordingly, the plaintiff's

allegations concerning the Small Business Climate Assessment Project provide no basis for her claims concerning the reassignment of her project duties.

### f. Strategic Planning Project

The defendant contends that responsibility for the Strategic Planning Project was removed from the plaintiff at her own request. Def.'s Mot. at 16; Def.'s Reply at 13-14. Relying on Ridgely's deposition testimony and declaration, the defendant asserts that the plaintiff removed herself from the project based on her assessment that an off-site contractor, Ventura Group, would be better suited to handle this responsibility. Def.'s Mot., Ex. 1 at 233, 272; Def.'s Mot., Ex. 10 at 4. The defendant states that after the plaintiff removed herself from the project, Ridgely tasked Randall with seeing it through to completion. Def.'s Mot. at 16.

The plaintiff does not dispute that she recommended that Ridgely retain Ventura Group, nor does she dispute that Ventura Group was awarded the project. *See* Pl.'s Opp'n at 9, 21; *see also* Def.'s Mot. at 16. Instead, the plaintiff rests her rebuttal entirely on the bare statement in her declaration that "Ridgely reassigned the duty to Randall. I did not remove myself from the project." Pl.'s Decl. ¶ 8. This Circuit has made clear that "[a]lthough, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465 (D.C. Cir. 2009) (quoting *Greene*, 164 F.3d at 675); *see also Colbert v. Tapella*, 2010 WL 45554, at *2 (D.D.C. Jan. 7, 2010) (noting that the non-moving party "may not rely solely on allegations or conclusory statements" and "must present specific facts that would enable a reasonable jury to find in its favor"). The statement, "I did not remove myself from the project,"

Pl.'s Decl. ¶ 8, unsupported by additional evidence in the record, is precisely the type of conclusory allegation that is insufficient to raise a genuine issue of material fact.

Even if the plaintiff had offered sufficient evidence to rebut the defendant's asserted justification regarding the Strategic Planning Project, it would do little to salvage the plaintiff's claims concerning the reassignment of her project duties. As discussed in the preceding sections, the plaintiff has entirely failed to rebut the defendant's assertion that each "reassignment" on which the plaintiff bases her claims either did not occur, was supported by a legitimate justification or had no connection to a discriminatory or retaliatory motive. *See supra* Parts III.D.2.a-e. As a result, even crediting the plaintiff's assertion that she did not remove herself from the Strategic Planning Project, the basis of the plaintiff's claims concerning the reassignment of her project responsibilities would be reduced to Ridgely's purported removal of this one project.

As for the plaintiff's retaliation claim, the plaintiff has again failed to point to any evidence indicating a link between her involvement in protected activity and the removal of her responsibility for the Strategic Planning Project. *See generally* Pl.'s Opp'n; Compl. The court, therefore, grants summary judgment to the defendant on the plaintiff's retaliation claims based on the removal of her project duties.

Likewise, the plaintiff has offered insufficient evidence from which a trier of fact could infer discriminatory intent. The plaintiff has offered no direct evidence that her responsibility for the Strategic Planning Project (or any of the other project duties) was removed due to racial animus. *See generally* Pl.'s Opp'n; Compl. Furthermore, the plaintiff's prima facie case, which

has, at best, been reduced to the removal of one project responsibility, is exceedingly weak,[8] offering little support for an inference of discriminatory intent. *See Reeves*, 530 U.S. at 148 (observing that the strength of the plaintiff's prima facie case is relevant to determining whether discrimination occurred); *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 216 (D.D.C. 2008) (observing that "the strength of the prima facie case is still relevant . . . to the central inquiry of whether [the plaintiff] has demonstrated that a reasonable jury could conclude from all the evidence" that the plaintiff acted from an improper motive). Furthermore, as discussed above, the plaintiff offers little evidence to rebut the defendant's asserted justification for removing her responsibility for the Strategic Planning Project. *See* Pl.'s Opp'n at 9, 21. Because a reasonable jury could not infer discriminatory intent from this evidence, the court grants the defendant summary judgment on the plaintiff's discrimination claim based on the removal of her project duties.

### 3. The Plaintiff's Termination

The defendant asserts that it terminated the plaintiff because she became unable to discharge her job responsibilities due to depression and anxiety issues and the defendant needed someone to take on the plaintiff's duties. *See* Def.'s Mot. at 18. This court previously noted that

---

[8]     The defendant contends that even after Ridgely "took away" the plaintiff's project assignments, the plaintiff retained a host of duties, including the following: OSDBU procurement duties; the 8(a) Program, the Small Disadvantaged Business Program; the Subcontracting Program; and the Electronic Subcontract Reporting System. *See* Def.'s Mot. at 11. Although the plaintiff alleges that Ridgely interfered with her involvement in the 8(a) program and the Small Disadvantaged Business Program, *see* Pl.'s Decl. ¶ 3, she does not dispute that she retained the other responsibilities identified by the defendant, *see generally id.*; Pl.'s Opp'n. In light of the above, the reassignment of one duty would not support a prima facie case of discrimination, as the reassignment of duties constitutes an adverse employment action only if it results in a significant diminishment of material responsibilities. *See Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997) (citing with approval the fact that "other circuits have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour change"); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (stating that "an adverse personnel action may occur if the change of work-related duties amounts to '*significantly diminished* material responsibilities'") (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

the inability to perform one's duties constitutes a legitimate justification for removal. *See* Mem. Op. (Aug. 7, 2008) at 24 (citing *Thompson v. Henderson*, 2007 WL 930271, at *11 (6th Cir. Mar. 28, 2007); *Kinsey v. City of Jacksonville*, 2006 WL 1827747, at *3-4 (11th Cir. July 3, 2006); *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 59, 61 (7th Cir. 1990)).

The plaintiff maintains that the defendant's proffered justification is a pretext for discrimination and retaliation. *See* Pl.'s Opp'n at 25-26. As the plaintiff points out, Ridgely stated during her deposition that she replaced the plaintiff by promoting another employee, Teneshia Alston,[9] to a higher grade level and assigning the plaintiff's responsibilities to her. *See* Pl.'s Opp'n at 26 & Ex. 17 at 83-84. When asked during the deposition when the promotion occurred, Ridgely responded, "[i]n the fall of '08. I don't recall exactly." Pl.'s Opp'n, Ex. 17 at 84. The plaintiff argues that the defendant's failure to transfer the plaintiff's responsibilities to another employee for more than a year after terminating her in July 2007 undermines the defendant's assertion that it needed an employee to take over the plaintiff's former responsibilities. Pl.'s Opp'n at 26. The plaintiff also contends that the defendant's asserted justification is undermined by the fact that the defendant still has not hired anyone to fill the Deputy Director position. *Id*. at 25.

The plaintiff does not dispute that after the plaintiff commenced her leave of absence in June 2006, the bulk of her responsibilities were transferred to Alston, who was at the time working a GS-13 level. Pl.'s Opp'n at 13, 25-26 & Ex. 16 (Def.'s Answers to Interrogs.) at 9. Nor is there any dispute that Ridgely used the vacancy created by the plaintiff's termination to promote Alston to a GS-14 level.[10] *See* Pl.'s Opp'n at 13.

---

[9]     Like the plaintiff, Alston is an African-American woman. Def.'s Mot. at 21.

[10]     The plaintiff was at a GS-14 level at the time of her termination. Compl. ¶ 7.

Although the plaintiff relies heavily on Ridgely's testimony that she did not promote Alston until a year after the plaintiff's termination, the defendant has provided documentary evidence demonstrating that Ridgely's deposition testimony was mistaken and that Alston's promotion took place in the fall of 2007 rather than 2008. *See* Def.'s Reply at 15 & Ex. 3. Specifically, the defendant has submitted a "Notification of Personnel Action" indicating that Ridgely promoted Alston on October 14, 2007, a few months after the plaintiff's termination. *See* Def.'s Reply, Ex. 3. Ridgely states in a supporting declaration that "on October 14, 2007, Ms. Teneshia Alston[] assumed a GS 14 position in OSDBU and said position largely assumed Plaintiff's former duties." Def.'s Reply, Ex. 1 ¶ 18. Thus, the evidence clearly indicates that shortly after the plaintiff's termination, Ridgely took prompt action to assign another employee the plaintiff's former duties and used the vacancy created by the termination to elevate Alston. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) (holding that in resolving the defendant's motion for summary judgment, the district court properly concluded that an employee was not hired in 1999, despite the supervisor's vague testimony that he thought he had interviewed the employee in 1999, given the overwhelming documentary evidence establishing that the hiring took place in 1998); *see also Anderson*, 477 U.S. at 249-50 (noting that summary judgment is properly granted if the non-movant's evidence is "merely colorable" or "not significantly probative").

That Alston was not given the title of Deputy Director is of no moment, given the fact that the plaintiff does not dispute that Alston assumed the plaintiff's former duties and responsibilities, *see* Pl.'s Opp'n at 25-26, and the fact that the defendant's asserted justification centered on the need to have someone "carry out the duties and responsibilities of the [plaintiff's] position," Def.'s Mot., Ex. 21 at 3. The court perceives no inconsistency between

the defendant's failure to hire a new Deputy Director and its asserted non-discriminatory and non-retaliatory justification for the plaintiff's termination.

The plaintiff points out that in its prior decision, this court did note that the temporal proximity between a November 2006 letter from the plaintiff's husband regarding her EEO activity and the proposed termination in January 2007 was "sufficient for a reasonable jury to infer retaliation." Mem. Op. (Aug. 7, 2008) at 30. The court assumed, however, for purposes of that analysis that the plaintiff could offer evidence to rebut the defendant's asserted legitimate, non-discriminatory and non-retaliatory justification for the termination. *Id*. at 26-30.[11] Accordingly, the court permitted the plaintiff to seek discovery regarding this claim.

As discussed above, however, even with the benefit of extensive discovery, the plaintiff has failed to offer evidence to rebut the defendant's asserted justification for her termination. In light of the unrebutted evidence that the defendant terminated the plaintiff so that it could assign her duties to an individual able to satisfactorily perform them, the plaintiff's circumstantial evidence of retaliatory intent, based solely on the proximity between the November 2006 letter and Ridgely's termination proposal two months later,[12] does not raise a genuine issue of material fact that the defendant's asserted justification was pretext for retaliation. *See Hicks*, 509 U.S. at 515.

---

[11]    Specifically, the court noted that there remained a question as to whether the defendant subjected the plaintiff to a hostile work environment that resulted in her inability to work, which would undercut the plaintiff's legitimate, non-discriminatory justification. *See* Mem. Op. (Aug. 7, 2008) at 26-27 (observing that "[b]ecause the plaintiff could still succeed on her hostile work environment claim, the court assumes, *arguendo*, that the plaintiff rebuts the defendant's legitimate non-retaliatory justification"). As discussed below, the plaintiff has failed to a raise a genuine issue of material fact concerning whether she was subjected to a hostile work environment claim. *See infra* Part III.C.

[12]    As noted in the court's prior opinion, courts in this district have varied as to whether a two-month proximity between protected activity and a materially adverse action is sufficient to establish a causal connection. *See* Mem. Op. (Aug. 7, 2008) at 29-30.

The plaintiff has also failed to offer sufficient evidence from which a reasonable jury could conclude that the defendant's asserted justification was a pretext for discrimination. *See* Pl.'s Opp'n at 13, 25-26. Indeed, the fact that Ridgely used the vacancy created by the plaintiff's termination to promote another African-American employee, who succeeded to the plaintiff's former job responsibilities, significantly undercuts any inference of discriminatory intent. *See* *Murray*, 406 F.3d at 715; *Peterson*, 2007 WL 1307889, at *3. Accordingly, the court grants summary judgment for the defendant on all claims premised on her termination.

### C. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Hostile Work Environment Claim

#### 1. Legal Standard for Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986). Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67). On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris*, 510 U.S. at 21. Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an

employee's work performance.  *Id*. at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88

(1998).  In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived)
> disability; and many bosses are harsh, unjust and rude.  It is therefore important in
> hostile work environment cases to exclude from consideration personnel decisions
> that lack a linkage of correlation to the claimed ground of discrimination.
> Otherwise, the federal courts will become a court of personnel appeal.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d

365, 377 (2d Cir. 2002)).

### 2. The Plaintiff Has Failed to Raise a Genuine Issue of Material Fact With Respect to Her Hostile Work Environment Claim

The defendant asserts that the court should grant it summary judgment on the plaintiff's

hostile work environment claim because she has presented no evidence indicating that she was

subjected to "severe and pervasive" mistreatment.  Def.'s Mot. at 22-23; Def.'s Reply at 16.  The

defendant argues that the plaintiff's hostile work environment claim is premised merely on

"ordinary tribulations of the workplace," substantiated only by the plaintiff's own self-serving

declaration.  Def.'s Mot. at 23-28; Def.'s Reply at 16-20.  In addition, the defendant contends

that the plaintiff has offered no evidence suggesting a link between the allegedly harassing

behavior and her membership in a protected class or participation in protected activity.  Def.'s

Mot. at 28-29; Def.'s Reply at 20.

The plaintiff maintains that through a series of actions designed to isolate, embarrass and

undermine the plaintiff and her ability to perform her work, Ridgely created a working

environment that was so hostile toward the plaintiff that she was unable to perform her duties.

Pl.'s Opp'n at 25.  She notes that due to the harassment she suffered, her psychological health

deteriorated to the point that her physician recommended that she take an extended leave of

absence.  *Id*. at 23-24.  The plaintiff, however, offers no response to the defendant's argument

concerning the absence of a link between the allegedly harassing behavior and her membership in a protected class or participation in protected activity. *See id.* at 22-25.

As this court noted in its prior decision in this case, although the plaintiff's deteriorating psychological condition demonstrated that she was subjectively suffering emotional injuries, a plaintiff must also establish that the harassing behavior was sufficiently severe or pervasive from an objective standpoint to give rise to a hostile work environment. *See* Mem. Op. (Aug. 7, 2009) at 21; *see also Harris*, 510 U.S. at 21 (noting that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview").

The plaintiff bases her hostile work environment claim on a litany of allegedly harassing behavior perpetrated against her by Ridgely, such as the diminishment of her job responsibilities, public criticism of her job performance, the requirement that she communicate with Ridgely through e-mail only, alleged interference with the performance of her job duties, her exclusion from meetings, the imposition of unrealistic deadlines, the mishandling of a waiver request and an allegedly unwarranted criticism contained in her 2004 performance evaluation. *See* Pl.'s Opp'n at 23-24; Pl.'s Decl. ¶¶ 15-29. The plaintiff has provided no evidence that these instances of alleged mistreatment rose beyond the level of ordinary workplace conflicts, which are not sufficiently severe or pervasive to support a hostile work environment claim. *See, e.g.*, *Hussain v. Nicholson*, 435 F.3d 359, 366-67 (D.C. Cir. 2006) (concluding that the plaintiff physician did not make out a viable hostile work environment claim based on his allegations that he was subjected to a host of workplace injustices, including denial of special pay and clinical privileges, heightened monitoring by supervisors, poor performance evaluations, denial of medical leave and failure to address insubordination by other employees); *Hussain v. Gutierrez*,

593 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that the plaintiff's allegations regarding the fact that her job responsibilities were continually changed and downgraded, and that she was asked to do tasks below her job title and asked to sit in the reception area did not support a hostile work environment claim); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54-55 (D.D.C. 2004) (concluding that the plaintiff's allegations that her immediate supervisor froze her out of important meetings, humiliated her at those meetings she did attend, refused her request to be excused from a hearing and criticized her in an abusive manner did not amount to severe and pervasive treatment sufficient to alter the conditions of her employment); *Richard v. Bell Atl. Corp.*, 209 F. Supp. 2d 23, 35 (D.D.C. 2002) (noting that the "the type of conduct that [the plaintiff] complain[ed] of, i.e., rude comments, unjust criticism, and stressful working conditions, amount to 'ordinary tribulations of the workplace' that [is] insufficient as a matter of law for a hostile [work] environment case"). Accordingly, the plaintiff has not raised a genuine issue of fact as to whether Ridgely fostered working conditions so severe or pervasive to give rise to an objectively hostile working environment.

Moreover, the plaintiff has provided no evidence indicating any "linkage of correlation" between the allegedly harassing behavior and the claimed ground of discrimination or her participation in protected activity, *see generally* Pl.'s Opp'n; Pl.'s Decl., as required to sustain a hostile work environment claim, *see Bryant*, 265 F. Supp. 2d at 63 (noting that absent such a linkage requirement, "the federal courts will become a court of personnel appeal"). The absence of such evidence warrants summary judgment to the employer on a hostile work environment

claim.[13] *See Kline v. Springer*, 602 F. Supp. 2d 234, 243 (D.D.C. 2009) (granting summary judgment to the defendant on a hostile work environment claim because almost none of the comments relied on to support the claim had any direct connection to the plaintiff's race or sex and most of the comments were "completely unconnected to impermissible motive"); *Hussain*, 593 F. Supp. 2d at 7 (noting that the plaintiff must demonstrate that "the harassment occurred because of her protected status" to sustain a hostile work environment claim); *Chaple v. Johnson*, 453 F. Supp. 2d 63, 73-74 (D.D.C. 2006) (observing that "[i]t must be clear that the hostile work environment was the result of discrimination based on a protected status") (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999)); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 140 (D.D.C. 2006) (granting summary judgment to the defendant on a hostile work environment claim because "[o]nly a handful of the comments (and none of the conduct) by [the] plaintiff's co-workers could have been even remotely linked to [the] plaintiff's membership in a protected class" and "[t]hese isolated statements, while no doubt offensive to the plaintiff, simply are not 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' on the basis of the plaintiff's race or sex"); *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) (observing that incidents bearing no relation to the plaintiff's protected class cannot be used to support a hostile work environment claim).

In short, the plaintiff has failed to raise a genuine issue of fact concerning whether she was subjected to a severe or pervasive working environment on the basis of her protected class or

---

[13]     The plaintiff's reliance on *Quiles-Quiles v. Henderson*, 439 F.3d 1 (1st Cir. 2006) is misplaced, as the First Circuit concluded that the plaintiff had raised a genuine issue of material fact concerning his hostile work environment claim because of evidence that the plaintiff "was subject to such constant ridicule *about his mental impairment* that it required him to be hospitalized and eventually to withdraw from the workforce." *Id.* at 7.

involvement in protected activity.  Accordingly, the court grants the defendant summary judgment on the plaintiff's hostile work environment claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's renewed motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 17th day of March, 2010.

RICARDO M. URBINA
United States District Judge